[Crim. No. 12696. In Bank. Dec. 23, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
SHERRY LEE GILBERT, Defendant and Appellant.

476

## COUNSEL

Thomas W. Cochran for Defendant and Appellant.

Richard E. Erwin, Public Defender (Ventura), Harkjoon Paik, Deputy Public Defender, Mary Gell and James H. Miller as Amici Curiae on behalf of Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bruce Wm. Dodds, Deputy Attorney General, for Plaintiff and Respondent.

James Don Keller, District Attorney (San Diego), and Albert L. Wells, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**TOBRINER, J.**—Defendant appeals from a judgment of the Superior Court of Los Angeles County convicting her of fraudulently obtaining more than $200 in Aid to Families with Dependent Children (hereinafter AFDC) payments in violation of section 484 of the Penal Code. We conclude that the special provision of the Welfare and Institutions Code dealing with welfare fraud (§ 11482) precludes prosecution of such fraud under the older general theft provision of the Penal Code (§ 484). Since this conclusion requires reversal of defendant's conviction, we do not determine the constitutionality of the manner in which the trial court and the Department of Social Welfare calculated the amount of the overpayment which defendant received.

### Facts

During the later part of 1965 and the early part of 1966, defendant, together with her child by a previous marriage, received assistance from the County of Los Angeles under the AFDC program, Welfare and Institutions Code sections 11200-11488. In order to obtain that assistance defendant signed an affirmation of eligibility on May 30, 1965, and November 16, 1965. Defendant knew that she was required to notify welfare authorities of any change of circumstances which might affect her eligibility, including the presence in her home of a man with whom she was living.

From December 1965 until March 15, 1966, one Clifford Branch lived in defendant's home and maintained an admittedly intimate relationship with her. During this period Branch's gross monthly income exceeded $800. Defendant failed to report Branch's presence in her home. After welfare authorities discovered defendant's relationship with Branch, she was charged with grand theft. Following a nonjury trial, defendant was convicted of fraudulently obtaining more than $200.

The method by which the trial court calculated the overpayment of $200 is somewhat unclear. Under the facts of this case defendant received an overpayment of one dollar for every dollar of unreported net income which she obtained from Branch. The trial court may have concluded that defendant received an overpayment in excess of $200 because of Branch's admission that he had given defendant a total of $375 to cover his share of their living expenses. In light of current Department of Social Welfare (hereinafter DSW) regulations, Branch's admission does not suffice to support the conclusion that defendant received a net income from Branch in excess of $200.[1]

---

[1]Branch stated that during the three and one-half month period in question he gave defendant approximately $375 for "half the groceries and rent, and actually a good

The trial court may also have estimated the overpayment, however, by relying on the conclusive presumptions established by the DSW for computing welfare grants.[2] Section 11351 of the Welfare and Institutions Code[3] imposes on a man in Branch's position an obligation to support defendant and her children while living with defendant; DSW regulation 44-133.5[4] conclusively presumes that all Branch's income, less certain

general half of the expenses of the home." DSW regulation 44-101 defines "income" as "any benefit in cash or in kind which is in fact currently available to the individual. . . . To be considered in determining the AFDC payment, income must, in fact, be currently available to needy members of the family in meeting their needs during the budget period." Under this definition we can entertain no doubt that money given to defendant to purchase groceries to be consumed by Branch cannot be considered income to her.

Similarly, Branch's presence in the household had forced defendant to move to a larger, more expensive apartment. Since defendant's share of the rent at the new apartment almost equalled her rent at the old apartment, Branch's "contribution" to the rent afforded no income to defendant, but was payment by Branch of an additional expense incurred by defendant on his behalf. Branch also admitted giving defendant's child a few gifts, notably at Christmas, Easter, and for his birthday. Such gifts were probably exempt as "casual income." (DSW regulations 44-101.41, 41-111.44.) As a consequence, a very significant portion of the $375 given to defendant by Branch cannot be regarded as income to her. Whether in fact $200—or indeed any part—of that amount was income to defendant cannot be determined on the record before us.

[2] The investigator for the Los Angeles Bureau of Public Assistance, who testified at the preliminary examination that defendant had obtained an overpayment of $617, followed the department's method of computation. The transcript of this preliminary examination was incorporated by stipulation into the record of the trial.

[3] "Where a needy child lives with his mother and . . . an adult male person assuming the role of spouse to the mother although not legally married to her, the amount of the grant made pursuant to Section 11450 of this code [for AFDC] shall be computed after consideration is given to the income of . . . such adult male person. . . . The determination shall be based upon a standard which takes into account . . . such adult male person's income and expenses under regulations adopted by the department.

"Notwithstanding the provisions of Section 209 of the Civil Code [providing that a stepfather has no duty to support his wife's children], . . . such adult male person is bound to support, if able to do so, his wife's children if without support from such . . . adult male person they would be needy children eligible for aid under this chapter." (The Legislature placed the word "wife" in the statute when it dealt only with stepfathers. As applied to a man such as Branch, "wife" undoubtedly refers to the welfare mother with whom he is living.)

[4] ".5 *Income of Unmarried Father and a Man Assuming the Role of Spouse*

".51 The amount the unmarried father or man assuming the role of spouse is able to contribute to the *AFDC* family is net income to the FBU [Family Budget Unit].

".52 In situations in which the children of the unmarried father and mother are eligible for *AFDC* on the basis of unemployment or incapacity of the unmarried father, all the children of either parent in the home may be eligible for *AFDC*. In such cases the unmarried father and the mother and all children are included in the FBU and all income of these persons is income to the FBU.

".53 In all other situations, the ability of either the unmarried father or the man assuming the role of spouse to contribute to the FBU is determined as follows:

"Step 1. Determine total need in accordance with the *AFDC* assistance standard

specified deductions and expenses, was available for the support of defendant and her child.

*Welfare fraud cannot be prosecuted under section 484 of the Penal Code.*

Section 484 of the Penal Code provides in pertinent part: "Every person who shall . . . knowingly and designedly, by false or fraudulent representation or pretense, defraud any other person of money . . . is guilty of theft." Theft of money exceeding $200 in value constitutes grand theft, a felony. (Pen. Code, § 487.1.) Section 11482 of the Welfare and Institutions Code provides: "Any person other than a needy child, who willfully and knowingly, with intent to deceive, makes a false statement or representation or knowingly fails to disclose a material fact to obtain aid, or who, knowing he is not entitled thereto, attempts to obtain aid or to continue to receive aid to which he is not entitled, or a larger amount than that to which he is legally entitled, is guilty of a misdemeanor."

■ As we stated in *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593], "It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment." (See *Warne* v. *Harkness* (1963) 60 Cal.2d 579, 588 [35 Cal.Rptr. 601, 387 P.2d 377]; *Division of Labor Law Enforcement* v. *Moroney* (1946) 28

---

for the family consisting of the members of the FBU, the unmarried father or man assuming the role of spouse, and his children living in the home.

"Step 2. Determine total need of the FBU.

"Step 3. Compute the difference between the two budgets to determine the amount that represents the need of the unmarried father or man assuming the role of spouse for purposes of establishing his responsibility to meet his own needs and the extent of his responsibility to contribute to the FBU.

"Step 4. From the needs determined in *Step 3*, deduct his net income computed in accordance with Section 44-113 to establish his ability to contribute to the FBU.

"a. If his income exceeds the need, the excess is income to the FBU.

"b. If his income does not exceed the need, there is no income to the FBU. His children are needy and may qualify for *AFDC* as a separate case if his income is less than the need."

The Family Budget Unit (FBU) includes all members of the household eligible to share in the benefits of the AFDC payments, i.e., *not* the man merely living with the welfare mother. (See DSW regulation 42-535.22.) The effect of this regulation is that a man living with a welfare family must subsist at welfare levels unless and until he gets the woman and all her children off AFDC. The use of the phrase "man assuming the role of a spouse" is somewhat misleading, since DSW regulation 42-535.1 defines this phrase to include men who assumed no role whatever with regard to the children involved.

Cal.2d 344, 346 [170 P.2d 3]; *People* v. *Swann* (1963) 213 Cal.App.2d 447 [28 Cal.Rptr. 830]; *People* v. *Silk* (1955) 138 Cal.App.2d Supp. 899 [291 P.2d 1013].) Since sections 484 and 11482 involve different penalties (see Pen. Code, §§ 19, 487.1, 489), defendant urges that section 11482 is a special statute which precludes prosecution under the more general theft statute.

In *People* v. *Phillips* (1960) 64 Cal.2d 574, 581 [51 Cal.Rptr. 225, 414 P.2d 353], we explained that a misdemeanor statute prohibiting "fraudulent misrepresentations as to cures for cancer" foreclosed a felony prosecution for grand theft under section 484 if the conviction for the misdemeanor offense required that the victim "actually parted with value." (P. 582.) ▮ Since the relevant portion of section 11482 does contemplate that the victim actually part with value, it does, under the *Phillips* test, "include the same matter" as the grand theft statute and thus conflicts with it.

▮ Section 11482 contains two distinct clauses, one dealing with attempts (applying to persons who, knowing they are not entitled thereto, attempt to obtain aid or to continue to receive aid to which they are not entitled, or a larger amount than that to which they are entitled), and the other dealing with false statements made to obtain aid (applying to a person "who willfully and knowingly, with intent to deceive, makes a false statement or representation or knowingly fails to disclose a material fact to obtain aid"). Thus the clause as to false statements applies only when the statements are made to obtain unauthorized welfare payments. The crucial issue then turns on whether the words "to obtain aid" mean "in obtaining aid" or "in attempting to obtain aid."

If the clause as to false statements dealt only with statements made in *attempting* to obtain aid, that clause would clearly add nothing to the clause as to attempts. ▮ "A cardinal rule of construction is that . . . a construction making some words surplusage is to be avoided." (*Watkins* v. *Real Estate Comr.* (1960) 182 Cal.App.2d 397, 400 [6 Cal.Rptr. 191].) ▮ Since the Legislature chose not to use the term "attempt" in the clause as to false statements, unlike the clause as to attempts, it must have intended that the two clauses not deal with the same conduct. The penal provisions of the Welfare and Institutions Code dealing with Old Age Security (§ 12250) and Aid to the Needy Disabled (§ 13800) are comparable to section 11482 in that both contain clauses applicable only to persons who *actually obtain* unauthorized assistance; we naturally assume that the Legislature intended to treat in a like manner crimes which are virtually indistinguishable.

Inasmuch as the clause as to false statements applies only to statements made *in obtaining* unauthorized assistance, it follows that any conduct which violated that clause would also constitute a violation of the theft provision of the Penal Code. This overlap of provisions carrying conflicting penalties typifies the kind of conflict which we envisioned in *Williamson;* it requires us to give effect to the special provision alone in the face of the dual applicability of the general provision of the Penal Code and the special provision of the Welfare and Institutions Code.[5] (See *People* v. *Silk, supra,* 138 Cal.App.2d Supp. 899.)

In light of our conclusion that section 11482 precludes prosecution under the theft statute, and thus that the instant conviction must be reversed, we need not reach the other substantial issues presented by defendant. (Cf. *Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 66 [195 P.2d 1]; *MacLeod* v. *City of Los Altos* (1960) 182 Cal.App.2d 364, 366 [6 Cal. Rptr. 326].) If we were to conclude that defendant could be subjected to prosecution under section 484, we would then be required to fix the amount of the overpayment which she fraudulently obtained. That determination would necessitate inquiry into Branch's duty to support defendant (Welf. & Inst. Code, § 11351) and into the conclusive presumption that she obtained such support (DSW regulation 44-133.5).[6] Defendant challenges

---

[5]Section 11485 provides in part: "The enforcement remedies provided the district attorney under this article [sections 11475-11488] shall not preclude the use of any other remedy which he has under the law to enforce this article." This provision merely refers to those provisions which confer powers and duties on the district attorney by name. (See §§ 11475, 11476, 11477, 11478, 11479, 11481, 11484, and 11485.) Section 11482 does not refer specifically to the district attorney. A welfare recipient who violated section 11482 could be arrested by any person who witnessed the misdemeanor (see Pen. Code, §§ 834, 837), brought to trial pursuant to a complaint signed by welfare authorities (see Pen. Code, § 740), and prosecuted by the Attorney General (see Gov. Code, § 12550). If the Legislature wanted to retain the theft penalty in welfare fraud cases, it would have explicitly so stated. (Compare *People* v. *Swann* (1963) 213 Cal.App.2d 447 [28 Cal.Rptr. 830], with Pen. Code, § 484g.)

The People have referred us to a number of published decisions which assume that welfare fraud can be punished under the theft provisions of the Penal Code. (See, e.g., *Parrish* v. *Civil Service Com.* (1967) 66 Cal.2d 260, 269 [57 Cal.Rptr. 623, 425 P.2d 223].) In only one of these, however, was the impact of section 11482 considered. (*People* v. *Lopez* (1968) 265 Cal.App.2d Supp. 980 [71 Cal.Rptr. 667].) To the extent that *Lopez* conflicts with our opinion, it is disapproved.

[6]In their brief the People state that this presumption "is always rebuttable." Although the Department of Social Welfare appears to hold a contrary view (see DSW regulation 44-133.5, *supra*), section 11351, in requiring that account be taken of the man's "expenses," may contemplate that the recipient be permitted to show that the man's expenses consumed all of his income. In view of our conclusion that defendant was improperly prosecuted under section 484, however, we need not decide whether section 11351 sanctions the conclusiveness of the DSW regulation.

the constitutionality of both the section and the regulation, and correctly asserts that *People* v. *Shirley* (1961) 55 Cal.2d 521 [11 Cal.Rptr. 537, 360 P.2d 33, 92 A.L.R.2d 413],[7]  did not decide these issues.

Defendant's challenge does indeed raise serious constitutional issues, which we briefly set forth.[8] Section 11351 and DSW regulation 44-133.5 are alleged to deny equal protection of law because they single out AFDC recipients and their male friends for special treatment. Section 11351 places a duty of support on a man living with a poor family eligible for AFDC, but not on a man living with an affluent family, or with a poor family ineligible for AFDC,[9] or with a poor family receiving assistance under other welfare programs.[10] Under both state law[11] and the welfare

[7]*Shirley* involved section 11351, which, prior to 1961, covered only stepfathers. Notwithstanding this limitation the Department of Social Welfare had promulgated a regulation, C-212.62, implementing another regulation, C-155, which in essentially the same manner as the present DSW regulation 44-133.5 imputed to an AFDC applicant most of the income of a man living with her. In *Shirley,* a theft prosecution for welfare fraud, the defendant challenged the validity of regulation C-212.52, arguing that it conflicted with sections 55 (requiring solemnization of a marriage) and 209 (limiting the support duty of a stepfather) of the Civil Code. We concluded that regulation C-212.62 did not conflict with sections 55 and 209, inasmuch as the regulation did not purport to create a legally enforceable support duty. We also concluded that regulation C-212.62 framed a rule for the administration of AFDC and therefore found authorization in section 11209 of the Welfare and Institutions Code.

The issues raised in *Shirley* were entirely statutory; the defendant presented no constitutional contentions and we did not purport to consider the application of any constitutional standards. It is axiomatic that cases are not authority for propositions not considered. (*McDowell & Craig* v. *Santa Fe Springs* (1960) 54 Cal.2d 33, 38 [4 Cal.Rptr. 176, 351 P.2d 344].)

[8]These constitutional issues are presently before the United States Supreme Court. (*Lewis* v. *Stark* (N.D. Cal., Dec. 23, 1968, Civ. No. 50285 (three judge court)), probable juris. noted *sub nom. Lewis* v. *Montgomery* (1969) 396 U.S. 900 [24 L.Ed.2d 176, 90 S.Ct. 237].)

[9]A needy child would be denied AFDC, for example, if (a) his parent or parents were not working, but failed to qualify as unemployed because they were able to work but were neither seeking work nor accepted for or in a training program (Welf. & Inst. Code, § 11201, subd. (a)); (b) the child's parent or parents were affluent but refused nonetheless to provide the child with adequate support (Welf. & Inst. Code, § 11250); (c) the child was between 16 and 18 and involuntarily unemployed (Welf. & Inst. Code, § 11253); (d) the child's need was due to a parental desertion or separation occurring within the previous 90 days (Welf. & Inst. Code, § 11254); (e) the parent with whom the child was living refused to assist law enforcement officers in enforcing an absent parent's duty of care and support. (Welf. & Inst. Code, § 11477.) Of course, we express no opinion as to the validity of any of these provisions. (Compare *Smith* v. *King* (N.D. Ala. 1967) 277 F.Supp. 31, affd. (1968) 392 U.S. 309 [20 L.Ed.2d 1118, 88 S.Ct. 2128])

[10]See DSW regulation 42-507 (Old Age Security program).

[11]Thus a man living with an AFDC family, unlike a husband, possesses no community property interest in the woman's income (*Feig* v. *Bank of Italy* (1933) 218 Cal. 54 [21 P.2d 421]); his support obligation is not limited to half his income (com-

regulations[12] a man in Branch's position is treated as a husband for support purposes and as a stranger to defendant and her family for other purposes. Although the imposition of a support duty on a man living with a woman not his wife may tend to encourage marriages, section 11351 seems to discourage extramarital relationships among welfare recipients while regarding with indifference extramarital relationships among the affluent. Section 11351 may be designed to force Branch to pay defendant's welfare bill in lieu of the obligation of the state to do so, a device which might resemble in some respects the civil liability provision invalidated in *Department of Mental Hygiene* v. *Kirchner* (1964) 60 Cal.2d 716 [36 Cal.Rptr. 488, 388 P.2d 720, 20 A.L.R.3d 353]. Defendant, moreover, is entitled to the benefit of every reasonable doubt as to the proper construction of the statutory language. (*People* v. *Alotis* (1964) 60 Cal.2d 698, 708 [36 Cal.Rptr. 443, 388 P.2d 675].) The conclusive presumption contained in DSW regulation 44-133.5, moreover, raises

pare § 11351, par. Z, with *Feig* v. *Bank of Italy, supra,* 218 Cal. 54); he cannot file a joint state income tax return with the woman involved (Rev. & Tax. Code, §§ 18402 and 18402.5); neither he nor the woman involved can refuse to testify against one another at a civil or criminal proceeding (Evid. Code, §§ 970, 971); their confidential communications are not privileged (Evid. Code, § 980); and death, disability, pension, and burial rights accorded by the state to spouses of veterans and state employees are denied to persons who have not obtained the sanction of a formal marriage. (See, e.g., Gov. Code, §§ 13212, 32056; Mil. & Vet. Code, § 890.)

[12]Unlike a husband, a man living with an AFDC family cannot receive assistance under the AFDC program. The Social Welfare Board originally treated a man living with a welfare mother like a stepfather for AFDC purposes. All of his take-home pay and other net income, less certain specified deductions, were treated as "income available to the needy children." Neither a stepfather nor a man assuming the role of a spouse could receive AFDC funds. (Regulation C-212.62 (March 1961). This regulation dates from the mid-1950's. See tenBroek, *California's Dual System of Family Law: Its Origin, Development, and Present Status* (1966) 17 Stan.L.Rev. 614, 619 fn. 759.) Subsequently, the board elected to treat both sorts of men as "needy persons living in the same home with the [needy child who were] within the state's policy as essential to [the child's] well being." (See *County of Merced* v. *Department of Social Welfare* (1957) 148 Cal.App.2d 540, 541 [307 P.2d 46].) Both stepfathers and "men assuming the role of the spouse" were included in the family budget unit made eligible to share in the AFDC grant. (Regulation C-210.10 (1964) quoted in 44 Ops.Cal.Atty.Gen., *supra*, 155, 158-159.) Thereafter the Attorney General expressed the opinion that a man merely living with a welfare family could not receive part of an AFDC grant, arguing that the Legislature did not regard the presence of such as man as essential to the well being of the child. (44 Ops.Cal.Atty.Gen., *supra*, 155.) Currently a stepfather is part of the family budget unit and qualifies for AFDC assistance (regulation 44-213.111 (1968)) but a "man assuming the role of a spouse" does not. (Regulation 42-535.22 (1968).)

problems of procedural due process,[13] and may not be rationally related to the basic purposes of the AFDC program.[14]

We need not reach these difficult constitutional issues in this case, how-

---

[13]Although irrebuttable presumptions are often sustained as substantive rules (e.g., *City of New Port Richey* v. *Fidelity & Deposit Co.* (5th Cir. 1939) 105 F.2d 348, 351 [123 A.L.R. 1352]), such presumptions as rules of evidence are rarely given constitutional sanction since they deprive the party concerned of a due process hearing as to the facts at issue. (*Heiner* v. *Donnan* (1932) 285 U.S. 312, 324 et seq. [76 L.Ed. 772, 778 et seq., 52 S.Ct. 358]; *Hoeper* v. *Tax Com.* (1931) 284 U.S. 206 [76 L.Ed. 248, 52 S.Ct. 120, 78 A.L.R. 346]; *Schlesinger* v. *Wisconsin* (1926) 270 U.S. 230 [70 L.Ed. 557, 46 S.Ct. 260, 43 A.L.R. 1224]; *Bailey* v. *Alabama* (1911) 219 U.S. 219, 238 [55 L.Ed. 191, 200, 31 S.Ct. 145].) In upholding rebuttable presumptions the Supreme Court has often stressed that their effect is not conclusive. (*Adler* v. *Board of Education* (1952) 342 U.S. 485, 494-496 [96 L.Ed. 517, 525-526, 72 S.Ct. 380, 27 A.L.R.2d 472]; *Hawes* v. *Georgia* (1922) 258 U.S. 1, 5 [66 L.Ed. 431, 433, 42 S.Ct. 204]; *Mobile, J. & K. C. R. R. Co.* v. *Turnipseed* (1910) 219 U.S. 35, 43 [55 L.Ed. 78, 80, 31 S.Ct. 136, 32 L.R.A. N.S. 226].) Constitutional standards regarding presumptions in criminal cases are particularly high. (See *Leary* v. *United States* (1969) 395 U.S. 6 [23 L.Ed.2d 57, 89 S.Ct. 1532]; *Tot* v. *United States* (1943) 319 U.S. 463 [87 L.Ed. 1519, 63 S.Ct. 1241]; *Manley* v. *Georgia* (1929) 279 U.S. 1 [73 L.Ed. 575, 49 S.Ct. 215].) State use of irrebuttable presumptions may conflict with the federal statutory requirement of "an opportunity for a fair hearing before the State agency to any individual whose claim for aid to families with dependent children is denied . . . ." (42 U.S.C., § 602(a)(4).)

Unquestionably, the man and the AFDC family have far better information than is available to the Department of Social Welfare as to how the man actually spends his money. In order to overcome the attendant difficulties in calculating the man's contributions, the department could reasonably establish a rebuttable presumption that all the man's income after certain deductions had been given to the AFDC family. If the department doubts the accuracy of the information supplied to it, it could set a high standard of proof for AFDC applications. A shifted and heightened burden of proof, implemented by means of a strict but rebuttable presumption, would seem to provide a narrower solution for the problems and would protect an applicant's right to a full hearing. (Compare *Talley* v. *California* (1960) 362 U.S. 60, 63 [4 L.Ed.2d 559, 562, 80 S.Ct. 536]; *Schneider* v. *State* (1939) 308 U.S. 147, 162 [84 L.Ed. 155, 165, 60 S.Ct. 146].) The difficulties in ascertaining contributions among members of the same household cannot be insurmountable, moreover, since the department, despite the support duties involved, considers only *actual* contributions to applicants for Old Age Security made by legally responsible relatives and employs no presumptions whatever. (DSW regulation 42-503.)

[14]*King* v. *Smith, supra,* 277 F.Supp. 31, declared unconstitutional an Alabama rule cutting off all welfare assistance from an AFDC family if the mother was promiscuous. The court concluded that the punishment of a child to control his mother's immorality was not rationally related to the purpose of the AFDC program, namely, providing assistance for needy children and families. (Compare Welf. & Inst. Code, § 10000.) Section 11351 and DSW regulation 44-133.5 appear to penalize both the AFDC children and the AFDC mother to force a man in Branch's position to provide support. Within the context of a constitutionally valid support duty on a man living with an AFDC mother, other methods may be available to enforce such a duty without defeating the basic purpose of the AFDC program. (See, e.g., Welf. & Inst. Code, §§ 11475-11488.)

ever, since defendant cannot be prosecuted under section 484 of the Penal Code.[15]

The judgment is reversed.

Traynor, C.J., Peters, J., Mosk, J., and Sullivan, J., concurred.

McComb, J., and Burke, J., concurred in the reversal of the judgment.

---

[15]We note that new federal regulations, requiring the state to abandon the questioned procedures, will apparently moot the constitutional question. (See 45 C.F.R. § 203.1(b); Department of Health, Education and Welfare, Handbook of Public Assistance (1967) §§ 3120, 3124, 3131; *Solman* v. *Shapiro* (D.Conn.) 300 F.Supp. 409, 415-416, affd. mem. (U.S. 1969) 38 U.S.L.Week 3115. *But cf. Lewis* v. *Stark* (N.D. Cal. Dec. 23, 1968, Civ No. 50285) (three judge court) probable juris. noted *sub nom. Lewis* v. *Montgomery* (U.S. Nov. 10, 1969) 38 U.S.L.Week 3173.) These regulations became effective only after defendant's alleged violation of Penal Code section 484.