[No. B052152. Second Dist., Div. Seven. Aug. 7, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL O'CONNOR, Defendant and Appellant.

942

## COUNSEL

Christopher L. Haberman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Robert Katz and Kristofer Jorstad, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS (Fred), J.**—Appellant was charged with 20 counts of child molestation (Pen. Code,[1] § 288, subd. (a)) involving 5 boys. Various no probation provisions were alleged. (§§ 1203.066, subd. (a)(3), 1203.066, subd. (a)(7), 1203.066, subd. (a)(8)). Trial was by the court. A judgment of acquittal (§ 1118) was entered as to all six counts involving three of the boys (Victor, Francisco, and Steven). The trial court convicted appellant of all 14 counts involving the other 2 boys (Israel and Pedro). The court sentenced appellant to a thirty-four-year state prison term, eight years (the upper term) on one count and one-third of the middle term (six years), i.e., two years, on each of the other thirteen counts.

Appellant contends: (1) a special statute (§ 311.4, subd. (c)) precludes conviction under the general statute (§ 288, subd. (a)), (2) insufficient evidence supports some or all of the 14 counts, (3) the court erred in admitting appellant's sexually explicit sketches, (4) the court erred in failing to entertain an in-trial suppression motion, and (5) the court committed sentencing error.

We find the contentions lack merit and affirm the judgment.

### FACTUAL BACKGROUND

Although appellant makes an insufficiency of evidence claim, his arguments are essentially legal not factual. Accordingly, we summarize the evidence, with a perspective favoring the judgment (*People* v. *Barnes* (1986)

---

[1]Unless otherwise noted, all statutory references are to the Penal Code.

42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110]), and later consider each of those arguments.

Appellant was a postal employee and worked the 3 a.m. to 11:30 a.m. shift. After work he would return to his bungalow on Idell Street near 26th Avenue in Los Angeles. His mother lived in an adjacent bungalow. Nearby, approximately 100 feet away, there were apartment houses in which the 5 boys, the alleged victims, lived.

In 1987, when the offenses occurred, Israel and Pedro were 11 years old, Steven and Francisco were 10 years old, and Victor was 7 years old.[2] The boys would come home from school about 2:30 p.m. and often see appellant.

The events began by appellant telling Israel to come to his house and clean his yard. Israel went there with Steven. Instead of yard cleaning, the boys went inside and appellant told them to take their clothes off. Once undressed, he then had them wrestle while he videotaped them. He gave each boy $20.

When Israel and Steven went to appellant's house the second time, appellant had the boys undress, then, later, touch each other's penis. Appellant also put his mouth on each boy's penis. He gave them $20 each.

Israel described three other visits to appellant's house, accompanied each time by a different friend: Francisco, Victor, or Pedro. The events were similar:[3] appellant told them to undress, he gave them props, including a plastic knife, and had them "play Indians," had the boys touch each other's penis, he orally copulated each boy, he videotaped the events, and he gave each boy money.

Pedro described two similar visits to appellant's house, one with Israel, one with Victor. Steven testified to being inside appellant's house with Israel and described the undressing, wrestling, videotaping, and oral copulation by appellant, followed by appellant giving them each $40. Another time he went to appellant's house with Francisco, did not go inside, and appellant gave them $5 each. Francisco and Victor also testified to similar visits in appellant's house where there was undressing, wrestling, "playing Indian," oral copulation by appellant, videotaping, and payments of $20 (Victor) or $40 (Francisco).

None of the boys made a complaint. The police were contacted a year and a half later, in May 1989, only because of a comment by another boy,

---

[2] He became eight on November 15, 1987.
[3] During the visit with Victor there was no penis touching or oral copulation.

Edwardo. When Edwardo was told he could not steal automobile hood ornaments to obtain money, he said he'd "*go* with Michael [appellant]." His explanation precipitated an investigation by Detective Hales who interviewed Victor and then obtained a search warrant for appellant's house.

Detective Hales searched appellant's house on May 23, 1989. He found many video cameras, videotape machines, hundreds of videotapes, and 17 sketch notebooks. The notebooks contained drawings of naked boys engaged in sexual acts. Detective Hales selectively viewed the videotapes but found none of any of the five boys and none depicting child sex.

Detective Hales interviewed each of the five boys and in July 1989 arrested appellant. The trial began in April 1990. Appellant testified, denying that any of the five boys had ever been inside his house or that any of the described events had occurred.

## DISCUSSION

1. *Appellant contends a special statute (§ 311.4, subd. (c)) precludes conviction under the general statute (§ 288, subd. (a)).*

■ Prosecution under a general statute is precluded by a special statute when the general statute covers the same matter as, and thus conflicts with, the special statute. (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580]; *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].) In determining whether the two statutes conflict "the courts must consider the context in which the statutes are placed. If it appears from the entire context that a violation of the 'special' statute will necessarily or commonly result in a violation of the 'general' statute, the Williamson rule may apply even though the elements of the general statute are not mirrored on the face of the special statute." (*People* v. *Jenkins* (1980) 28 Cal.3d 494, 502 [170 Cal.Rptr. 1, 620 P.2d 587]. Original italics.)

■ Appellant contends that section 288, subdivision (a)[4] is a general statute precluded by section 311.4, subdivision (c),[5] a special statute. He is mistaken.

---

[4]The subdivision reads: "(a) Any person who shall wilfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of the child, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six, or eight years."

[5]The subdivision reads: "(c) Every person who, with knowledge that a person is a minor under the age of 17 years, or who, while in possession of any facts on the basis of which he

The elements of section 288, subdivision (a) are: (1) a lewd touching (2) of a child under 14 years of age (3) with the intent of sexual arousal. *None* of these elements is present in the latter statute. Its elements are: (1) using a person as a model (2) with knowledge the person is under 17 years old (3) in a film involving sexual conduct. *None* of these elements is present in section 288, subdivision (a). Nor is there anything about the statutory "context" that suggests a violation of section 311.4, subdivision (c) "will necessarily or commonly result in a violation" of section 288, subdivision (a). (See generally *People* v. *Robertson* (1990) 223 Cal.App.3d 1277 [273 Cal.Rptr. 209].) One can readily use a 16-year-old model in a sexual conduct film *without* lewdly touching a child, 13 years old or younger, for the purpose of sexual arousal.

The contention is without merit.

2. *Appellant contends insufficient evidence supports some or all of the 14 counts.*

■ Appellant argues that because the evidence shows only eight, not fourteen, separate incidents of *penis touching*, only eight counts can be sustained. Appellant is mistaken.

The prohibition of section 288 is not limited to genital touchings. Made criminal is a lewd touching of "the body, or *any* part or member thereof . . ." when the intent is sexual arousal. The section may be violated by rubbing the stomach of a seven year old (*People* v. *Dontanville* (1970) 10 Cal.App.3d 783, 796 [89 Cal.Rptr. 172]), requiring a child to drink urine (*People* v. *Pitts* (1990) 223 Cal.App.3d 606, 887 [273 Cal.Rptr. 757]), or requiring a child to undress (*People* v. *Austin* (1980) 111 Cal.App.3d 110, 114-115 [168 Cal.Rptr. 401]; *People* v. *Mickle* (1991) 54 Cal.3d 140, 175-176 [284 Cal.Rptr. 511, 814 P.2d 290]).

Appellant would distinguish *Austin* on the ground that in the instant case "[t]he children merely said that they took off their clothes. They did not testify that they took off *all* of their clothes . . ." The distinction fails for two reasons. First, as an appellate court we must draw inferences "in support

or she should reasonably know that the person is a minor under the age of 17 years, knowingly promotes, employs, uses, persuades, induces, or coerces a minor under the age of 17 years, or any parent or guardian of a minor under the age of 17 years under his or her control who knowingly permits the minor, to engage in or assist others to engage in either posing or modeling alone or with others for purposes of preparing a film, photograph, negative, slide, or live performance involving sexual conduct by a minor under the age of 17 years alone or with other persons or animals, is guilty of a felony. It shall not be necessary to prove commercial purposes in order to establish a violation of this subdivision."

of the judgment." (*People* v. *Barnes*, *supra*, 42 Cal.3d 284, 303.) Underwear, like pants and shirts, are "clothes." Second, the statute is violated even if, initially, the children did not remove their underwear.

■ Appellant's second insufficiency of evidence argument is based upon his acquittal of the six counts involving Victor, Francisco, and Steven. He argues that the conduct underlying these acquittal counts is identical to the conduct underlying some of the conviction counts, rendering the latter impermissibly inconsistent.

Prior to 1927 there might have been merit to appellant's argument. But " 'to avoid the result of those cases which interpret inconsistent verdicts as acts of stupidity rather than acts of leniency, section 954 of the Penal Code was amended in 1927.' " (6 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) § 3045, p. 3766.) The amendment added this sentence: "An acquittal of one or more counts shall not be deemed an acquittal of any other count." (§ 954.)

The "limited judicial exception to this rule which is applicable in conspiracy cases" (*People* v. *Pahl* (1991) 226 Cal.App.3d 1651, 1657 [277 Cal.Rptr. 656]), does not here apply.

Appellant's final argument is a reweighing of the evidence: he finds reasonable doubt. As an appellate court we may not reweigh the evidence. If "on the entire record, a rational trier of fact could find appellant guilty beyond a reasonable doubt" (*People* v. *Barnes*, *supra*, 42 Cal.3d 284, 303) we must affirm that finding. We have carefully read the entire record, examined all the exhibits, and are satisfied that substantial evidence supports each of the 14 guilty counts.

*3. Appellant contends the court erred in admitting his sexually explicit sketches.*

■ The trial court admitted into evidence 23 sketches found in appellant's residence during execution of the search warrant. Appellant claims it was error to admit the sketches because "they were offered to show that the defendant had a predisposition for sex with young boys; as such, they were impermissible character evidence (Evidence [§] 1101, subdivision (a))." We disagree.

As appellant correctly observes, neither identity nor intent was in issue. Nor was this a case where honest mistake was a possibility. The court was presented with two irreconcilable accounts. The victims testified to being

with appellant in appellant's house on numerous occasions. Appellant testified they had never been in his house. The victims testified to undressing at appellant's direction, to wrestling while being videotaped by appellant, to touching each other's penis at appellant's direction, and to being orally copulated by appellant. Appellant testified none of these acts occurred.

Contrary to appellant's assertion, Evidence Code section 1101, subdivision (a) is inapplicable to the subject evidence. It provides: "Except as provided in this section and in Sections 1102 and 1103, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

The sketches were not opinion evidence, evidence of reputation, or evidence of specific instances of conduct. Nor did their possession constitute evidence of an uncharged crime. (Cf. *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1].)

The sketches were properly admitted because they were relevant (Evid. Code, § 351). " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

The boys did not merely testify to acts of sexual molestation, testimony which could be fabricated. Rather, they all described a peculiar embellishment of the molestations: appellant had them "play Indians." He provided a plastic knife and had them wear a loin cloth. Any evidence corroborative of "playing Indians" was probative of victim credibility. The sketches provided such corroboration. Exhibit 25(A) depicts a boy orally copulating another boy while holding a large hunting knife in his right hand. Exhibits 25 (E), (P), and (U) all depict sexual conduct by boys with at least one boy dressed like an Indian.

Because there was no evidence the boys had ever seen the sketches, as appellant acknowledges, the sketches corroborated their testimony. Accordingly, they were relevant and properly admitted.

4. *Appellant contends the court erred in failing to entertain an in-trial suppression motion.*

■ Appellant made *three* motions to suppress evidence (§ 1538.5). Although appellant claims error only with respect to the third, it is necessary to describe the others in order to assess appellant's claim.

We begin with the statute.

"Section 1538.5 provides a comprehensive and exclusive procedure for the final determination of search and seizure issues prior to trial. Its enactment was chiefly aimed at redressing defects identified in the previously existing procedures: (i) the unnecessary expenditure of time and effort in allowing repeated challenges to the legality of a search or seizure during the course of a criminal proceeding; (ii) the waste of jury time in permitting search and seizure questions to be raised during trial, since the determination of these issues takes place outside the presence of the jury; and (iii) the lack of adequate opportunity for the prosecution to obtain appellate review of an adverse decision on a search and seizure question before trial commences and jeopardy attaches." (*People* v. *Brooks* (1980) 26 Cal.3d 471, 475-476 [162 Cal.Rptr. 177, 605 P.2d 1306].)

"[E]ffective January 1, 1987 . . . [a] defendant is now entitled to *only one full hearing* on his suppression motion." (*Anderson* v. *Superior Court* (1988) 206 Cal.App.3d 533, 538 [253 Cal.Rptr. 651].) That motion "shall be heard *prior to trial* . . . ." (§ 1538.5, subd. (i), italics added.)[6]

In superior court, on March 7, 1990, prior to trial, appellant filed his first suppression motion. It was based solely "on the ground that the search warrant fails to particularly describe the materials seized. . . ." The motion was heard on March 22, 1990, by Superior Court Judge James B. Pierce. As Judge Pierce made clear, he understood the motion as a "general warrant" contention, a claim of invalidity based upon an overbroad description of articles to be seized. *This* contention did not require, or permit, an evidentiary hearing and Judge Pierce was prepared to rule on it forthwith.

Appellant, however, stated that there were *two* grounds for his motion, the second (omitted from the written motion) being that "what was seized was not listed in the warrant." Appellant indicated that an evidentiary hearing was necessary to decide this second ground and suggested the hearing could be an "[Evidence Code section] 402" hearing. Judge Pierce denied the suppression motion but allowed appellant to raise his second ground by a "402 motion" with the trial court.

Appellant filed his second suppression motion on March 28, 1990. It was considered the next day by Superior Court Judge Gary Klausner in Department 100, the master calendar court. There was much discussion about

---

[6]Appellant does not claim that the section 1538.5, subdivision (h) exception ("If, prior to the trial of a felony . . . opportunity for this motion did not exist or the defendant was not aware of the grounds for the motion, the defendant shall have the right to make this motion during the course of trial in . . . superior court.") applies.

notice, "402 hearings," and Judge Pierce's earlier denial of appellant's suppression motion. Judge Klausner denied the motion as untimely, appellant not having given the People the required, 10-day notice (§ 1538.5, subd. (i)), but stated "the 402 motion, for whatever it is, can still be heard and that can be heard at the time of trial."

Six days later, on April 4, 1990, Superior Court Judge Michael R. Hoff asked both sides if they were ready to begin the trial. Trial counsel for appellant stated: "Your Honor, may I state for the record, there may be some motions that I wish to make with respect to certain evidence; however, I don't know if the prosecution will try to introduce it so I'm just going to wait."

Appellant waited until April 26, 1990, to file his third suppression motion. On May 4, 1990, the motion was denied as untimely.

Appellant argues the trial court erred in denying his (third) suppression motion because appellant had never been afforded the (one) *evidentiary* hearing required by section 1538.5, subdivision (c). Appellant is correct that he was entitled to an evidentiary hearing. He is mistaken that he was not afforded one. Both Judge Pierce and Judge Klausner indicated that appellant could raise the second ground for his suppression motion with the trial judge. The trial judge, *before* trial, asked if both sides were ready. Appellant, instead of *then* renewing his motion to suppress evidence, stated "I'm just going to wait." *Waiting*—until after the trial has started and jeopardy has attached—to make a suppression motion is prohibited by section 1538.5, subdivision (i). Such "waiting" thwarts one of the statute's purposes: to permit appellate review by the prosecution. (*People* v. *Brooks, supra,* 26 Cal.3d 471, 475-476.)

Appellant's contention is without merit. He was not *denied* a section 1538.5 evidentiary hearing, he simply failed to timely ask for one.

5. *Appellant contends the court committed sentencing error.*

■ Appellant argues the court erred in imposing the upper term on count I because its stated reasons were improper. We disagree.

After serving as the trier of fact, the trial court received sentencing memoranda from both sides (§ 1170), read and considered the probation report, heard sentence hearing testimony, and listened to extensive sentence arguments by counsel. Then the trial court stated:

"Probation is going to be denied. On count I I'm going to select the high term of eight years. The aggravating circumstances clearly outweigh the mitigating circumstances.

"In this matter the defendant totally was insensitive to the harm that he caused to the victims. The defendant induced the victims, very young victims, with money. The defendant induced a minor, namely, Israel, to go out and bring other victims to him.

"I think the defendant is a danger to society."

By its statement the trial court relied upon four circumstances in aggravation, any one of which justified its sentence choice. The four are: (1) "The crime involved . . . acts disclosing a high degree of . . . callousness" (Cal. Rules of Court, rule 421(a)(1)); (2) "The victim was particularly vulnerable."[7] (id., rule 421(a)(3)); (3) "The defendant induced a minor to commit or assist in the commission of the crime." (id., rule 421(a)(5)); (4) "The manner in which the crime was carried out indicates planning, sophistication, or professionalism." (id., rule 421(a)(8)).

Appellant also argues the trial court failed to consider circumstances in mitigation. It did not. The court explicitly referred to "the mitigating circumstance," and there was only one: absence of a prior criminal record. (Cal. Rules of Court, rule 423(b)(1). Other mitigating circumstances claimed by appellant are spurious.

Next, appellant asserts the court erred in imposing consecutive sentences on the other counts because it failed to state reasons. We disagree. In context, it is sufficiently clear that the court's reasons, which we have quoted, also applied, as they may (Cal. Rules of Court, rule 425(b)) to its consecutive sentence choice. Since the court properly relied upon four aggravating circumstances in making two sentence choices, there was no prohibited dual use. (Ibid.)

Finally, in reliance upon People v. Harrison (1989) 48 Cal.3d 321 [256 Cal.Rptr. 401, 768 P.2d 1078], appellant contends imposition of consecutive sentences violated section 654. Appellant's reliance is misplaced. Harrison approved three consecutive sentences for three digital penetrations of a victim's vagina during a seven-to-ten-minute period. The instant sentences are well within the Harrison standard.

---

[7]The victim was 11 years old, not merely "under 14" as section 288, subdivision (a) requires, and poor. Contrary to appellant's argument on appeal, the record demonstrates the victim's poverty. Trial counsel for appellant argued to the trial court: "The defense has shown that this is a very bad area. It's a poor area . . . this 2616 [where the victims lived] . . . is a poor neighborhood." When his trial counsel asked him what the financial condition of the children was, appellant answered: "Most of them—most of the kids around there I guess are poor." Appellant further testified: "They see me at the markets or I'll be coming home, coming in the alley way entrance. Kids will see me and ask me for, you know, money. 'Give me a quarter or whatever' ".

## DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 12, 1992.