Filed 10/30/13  P. v. Caruthers CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C072656 |
| Plaintiff and Respondent, | (Super. Ct. No. 62112828) |
| v. | |
| MICHAEL JAY CARUTHERS, | |
| Defendant and Appellant. | |

Defendant Michael Caruthers was convicted, on a jury verdict, of corporal injury on a cohabitant (Pen. Code,[1] § 273.5, subd. (a)), dissuading a witness (§ 136.1, subd. (b)(2)), misdemeanor vandalism (§ 594, subd. (b)(2)(A)), and four counts of contempt of court for violating a domestic violence stay-away order (§ 166, subd. (c)(1)).  Caruthers admitted he had a prior serious felony conviction (§ 667, subd. (a), (b)-(i)) and had served two prior prison terms (§ 667.5, subd. (b)).  The trial court sentenced him to 17 years in

---

[1] Further undesignated statutory references are to the Penal Code.

prison.  On appeal, defendant contends all of his counts of conviction must be reversed due to instructional error.  We find no error and shall affirm.

## FACTS

Christine Morrison had an intimate relationship with defendant and they lived together off and on for four years in a trailer park.  At times, the relationship became physically abusive.  Once, defendant slammed her into a doorway, causing a black eye.  Another time, defendant pushed her off her bicycle.  Morrison did not report these incidents.

On March 26, 2012, Morrison and defendant argued in the driveway.  She got in her truck and began to drive away with her dog.  Defendant jumped in the bed of the truck.  She swerved and sped up through the trailer park, trying unsuccessfully to get defendant out of the truck.  Once she was on the road, defendant broke the back window of the truck and came into the cab.  She slammed on her brakes.  Defendant grabbed at her face and chin.  She stopped at a gas station and pleaded to be allowed to take her dog home.  She returned to the trailer park, locked her dog inside her residence, and went to a neighbor's until defendant left.

Morrison then went to the police.  She was very upset, shaking, and wanted help.  She filled out a citizen's arrest form, writing:  "He jumped in my truck and broke my back window, grabbed my face and made me go back to my house, and I ran to my neighbors."  An officer took photographs of her injuries.  Her neck and jaw line were red and she had a bruise between her cheekbone and ear and another on her right arm.  The officer opined her injuries were consistent with her story of what happened.

Morrison subsequently reported that defendant broke into her car and stole her cell phone, and he broke into her home.  She obtained a restraining order against him.  He called her several times from jail; these calls were recorded and played to the jury.  More than once, defendant asked her to tell the police the incident was only a verbal dispute.

2

Defendant caused two people to contact Morrison and ask her if she was going "to stick by him."

At trial, Morrison changed her story and claimed defendant did not intentionally grab her when he came through the truck window. Instead, she believed he was simply trying to grab something to pull himself inside the truck. She claimed that if defendant had wanted to physically hurt her, "it would have been a lot uglier than that."

To explain the change in Morrison's story, the People presented the testimony of Linda Barnard, a licensed marriage and family counselor, on intimate partner battering and its effect on the victim.[2] She testified about the cycle of violence, a repeating pattern of a "honeymoon phase" followed by increasing tension and abuse. She testified domestic violence was one of the most underreported crimes and 75 percent of women who report later recant or change their testimony. Victims often minimize the abuse. Given a hypothetical similar to the case against defendant and including Morrison's reluctance, she opined the hypothetical was consistent with intimate partner battering.

The People also introduced evidence of defendant's previous acts of domestic violence. In his marriage to Teresa Johns, arguments often escalated into violence. Once, during an argument about her cheating, he beat her in front of their children. She suffered injuries to her mouth and face. Another time, defendant hit Johns with an impact wrench. When her mother intervened, defendant attacked the mother and told her not to call the police. After the marriage ended, defendant beat and raped Johns. She filed a police report and defendant was convicted.

Theresa Harmon testified she lived with defendant for a short time. Once defendant grabbed and shook her. A few weeks later he got "real physical" in the car. When she tried to get out of the car, defendant punched her, pulled her hair, twisted her

_____

[2] "Intimate partner battering and its effects" is formerly referred to as "battered women's syndrome." (See Evid. Code, § 1107, subd. (f).)

leg, and threw her in the back of the car. She sustained a black eye and a sprained knee. She did not report the incident because she was afraid of him. Years later, defendant came by and she got a restraining order against him.

## DISCUSSION

## I

### *CALCRIM No. 850*

Defendant contends the trial court erred by instructing with CALCRIM No. 850 because "it was argumentative, impermissibly favored the prosecution, and mislead the jury on how it could consider Barnard's testimony."

The court instructed the jury with CALCRIM No. 850 as follows: "You have heard the testimony from Dr. Linda Barnard regarding the effect of Intimate Partner Battering. The testimony about Intimate Partner Battering is not evidence that the defendant committed any of the crimes charged against him. You may consider this testimony only in deciding whether or not [Morrison's] conduct was not inconsistent with the conduct of someone who has been abused in evaluating the believability of her testimony."

Evidence relating to intimate partner battering is relevant to the reasonableness of the victim's actions and to her credibility.[3] (*People v. Brown* (2004) 33 Cal.4th 892, 903 (*Brown*).) Evidence Code section 1107, subdivision (a) provides: "In a criminal action, expert testimony is admissible by either the prosecution or the defense regarding intimate partner battering and its effects, including the nature and effect of physical, emotional, or mental abuse on the beliefs, perceptions, or behavior of victims of domestic violence,

---

[3] In his reply brief, defendant contends the instruction *improperly* permitted the jury to consider Barnard's testimony to determine the credibility of Morrison's testimony. Although we agree that the instruction permits this use of Barnard's testimony, we disagree that this use is improper.

except when offered against a criminal defendant to prove the occurrence of the act or acts of abuse which form the basis of the criminal charge."

Defendant contends the instruction is argumentative because it "was supposed to be a cautionary instruction," but the cautionary language had been removed. In *Brown*, our Supreme Court discussed a previous version of the instruction, CALJIC No. 9.35.1, that included the language, "Battered women's syndrome research ... begins with the assumption that physical abuse has occurred, and seeks to describe and explain the common reactions of women to that experience. As distinguished from that research approach, you are to presume the defendant innocent. . . ." (*Brown, supra,* 33 Cal.4th at p. 902.) The court rejected the argument that the instruction "implicitly assumes the defendant is guilty," because the instruction said the exact opposite: the jury was to presume the defendant was innocent. (*Ibid.*) Defendant contends this language from CALJIC No. 9.35.1 should be included in CALCRIM No. 850. We disagree.

First, nothing in *Brown* requires this language. The Supreme Court addressed a challenge to including the language, not the necessity of having it. "It is axiomatic that cases are not authority for propositions not considered. [Citation.]" (*People v. Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7.) Second, in rejecting the defendant's contention the *Brown* court cited to *People v. Gilbert* (1992) 5 Cal.App.4th 1372, 1386-1387 (*Gilbert*), which found such cautionary language unnecessary in an instruction. (*Brown, supra,* 33 Cal.4th at p. 902.) In *Gilbert*, the court found an instruction regarding expert testimony about the posttraumatic syndrome of child sexual abuse victims was "clear, accurate, and sufficient" although it did not state that such evidence "'assumes that a molestation has in fact occurred and that the complaining witnesses ['] reactions were common explanations of a factual event.'" (*Gilbert, supra,* 5 Cal.App.4th at p. 1387.) The court concluded, "We would consider it unnecessary, and potentially confusing and misleading, to add the language Gilbert proposes." (*Ibid.*)

5

Defendant contends case law requires the trial court to add "cautionary language" when instructing with CALCRIM No. 850. But the instruction as given correctly limited the use of Barnard's testimony, informing the jury that evidence of the effect of intimate partner battering could be used *only* to show the victim's reaction was not inconsistent with having been abused; the evidence could *not* be used to determine if the claim of abuse is true. That is all that is required. (See *People v. Housley* (1992) 6 Cal.App.4th 947, 959 [CSAAS expert testimony].)

Defendant next contends the instruction favored the prosecution and misled the jury because it did not tell the jury it could use Barnard's testimony to determine that Morrison's conduct was *inconsistent* with having been abused. This contention fails because the jury was told that, twice. At defendant's request, the trial court instructed the jury before Barnard testified: "I just have an admonition to give to the jurors on how to consider this testimony about Intimate Partner Battering. Testimony about Intimate Partner Battering is not evidence that the defendant committed any of the crimes charged against him. You may consider this evidence only in deciding *whether or not* [Morrison's] conduct was not inconsistent with the conduct of someone who had been abused in evaluating the believability of her testimony. So it goes to her, the witness's testimony." This instruction, specifically including the jury's ability to determine *whether or not* Morrison's conduct was "not inconsistent" with abuse, was repeated at the end of the trial.

## II

### *CALCRIM No. 318*

Defendant contends the trial court erred by instructing with CALCRIM No. 318 because that instruction created an improper presumption that Morrison's prior statements were true. He argues the instruction incorrectly allowed the jury to consider Morrison's statements only for their truth, not their falsity.

6

The trial court instructed the jury using CALCRIM No. 318 as follows: "You have heard evidence of statements that a witness made before the trial. If you decide that the witness made those statements, you may use those statements two ways: [¶] 1. To evaluate whether the witness's testimony in court is believable, and [¶] 2. As evidence that the information in those earlier statements is true."

We review jury instructions as a whole, in light of the entire trial record, to determine whether it is reasonably likely the jury understood a challenged instruction in the manner defendant claims. (*People v. Cain* (1995) 10 Cal.4th 1, 36; *People v. Paysinger* (2009) 174 Cal.App.4th 26, 30.) We conclude it is *not* reasonably likely the jury understood the instruction to preclude a finding that Morrison's prior statements were untrue. The instruction provided that the jury "may use" a witness's prior statements, rather than that it *must* use or was otherwise required to consider the statements. Further, the instruction merely informed the jury that it may consider a prior statement as evidence of the truth of that statement's content, should it choose to consider the statement at all. Thus the instruction simply and properly clarified the jury's role to determine the weight accorded to the evidence presented as well as the credibility of the testifying witnesses.

The trial court gave additional instructions that also illuminated the jury's duties in this regard. CALCRIM No. 226 informed the jury that, "In evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony." CALCRIM No. 220 told the jury that: "In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty." The trial court did not err in giving CALCRIM No. 318.

7

## DISPOSITION

The judgment is affirmed.

                                        DUARTE            , J.


We concur:


          BLEASE            , Acting P. J.


          HOCH            , J.

8