[No. S047177. May 30, 1996.]

In re the Marriage of CARLOS V. and JOANNE LOIS CORNEJO.
CARLOS V. CORNEJO, Appellant, v.
JOANNE LOIS CORNEJO, Respondent.

**COUNSEL**

Arthur Brunwasser for Appellant.

Shearer, Lanctot & Noelke and Lawrence R. Lanctot for Respondent.

**OPINION**

**MOSK, J.**—In *In re Marriage of Gillmore* (1981) 29 Cal.3d 418 [174 Cal.Rptr. 493, 629 P.2d 1] (hereafter sometimes *Gillmore*), we held that retirement benefits that an employee spouse earns during a marriage to a nonemployee spouse are community property. On dissolution of the marriage, such benefits are subject to equal division. When the employee spouse becomes eligible for retirement, he may choose to retire and receive benefits or to continue to work. That is to say, he may retire and thereby commence drawing from the stream of income that then begins to flow, with the result that the nonemployee spouse may start to draw her share of the community property interest as well; or he may continue to work and thereby forgo the income he would have drawn, with the result that the nonemployee spouse is compelled to forgo what would have been her share as well. In brief, the employee spouse has an initial choice of retiring or continuing to work. He is not permitted, however, to adversely affect the nonemployee spouse's share by putting off his retirement. To prevent such an outcome, the nonemployee spouse too is allowed a choice. If the employee spouse continues to work, she may merely wait to draw her share when he commences to receive benefits (with the possibility of increase as a result of his then greater age, longer service, and/or higher salary); or she may demand immediate payment to compensate for what would have been her share (without such possibility of increase). Thus, the nonemployee spouse has a choice of delayed benefits or immediate payment. If she decides on the latter, the employee spouse is given another choice. He may make arrangements to meet her demand for immediate payment; or he may simply retire and allow her to draw her share. In a word, the employee spouse has a final choice of satisfaction or avoidance. (*In re Marriage of Gillmore, supra*, 29 Cal.3d at pp. 422-429.)

Plainly, if the employee spouse continues to work, and the nonemployee spouse chooses delayed benefits, she is entitled to obtain such benefits as of the date of his retirement.

The question presented is this: If the employee spouse continues to work, and the nonemployee spouse chooses immediate payment, as of what date is she entitled to obtain such payment?

I

In 1978, appellant Carlos V. Cornejo (hereafter Carlos) filed a petition in the San Francisco Superior Court seeking dissolution of his marriage of 21 years to respondent Joanne Lois Cornejo (hereafter Lois). Carlos was employed by the San Francisco Unified School District. He belonged to the State Teachers' Retirement System (hereafter STRS), and would become eligible to retire when he reached 60 years of age, on May 16, 1989. STRS was joined in the dissolution proceeding as a party claimant and made an appearance. In 1979, the court entered an interlocutory judgment of dissolution in conformity with a marital settlement agreement between the parties. As a general matter, the court divided the community property equally: its division followed the parties' resolution of the issues. But it retained jurisdiction expressly to determine the extent of the community property interest in Carlos's retirement benefits in STRS and impliedly to make necessary and appropriate orders to ensure that each party would receive his or her share, directing Carlos not to make any encumbrance in the interim. Its retention of jurisdiction was with the consent of the parties, who had attempted but failed to resolve this issue themselves. In 1980, it entered a final judgment in accordance with the interlocutory judgment.

On August 3, 1992, Lois sent a letter to Carlos, who had continued to work, asking whether he planned to retire in the near future and stating her intention, if he did not, to file a motion in the superior court for modification of the final judgment. Available STRS documents revealed that her share of the community property interest in his retirement benefits, as of May 1992, was about $1,381 a month "unmodified," i.e., without provision for payments after his death.

On March 31, 1993, Lois filed her intended motion in the superior court for modification of the final judgment. She requested the court to determine the community property interest in Carlos's retirement benefits in STRS and to order him to make immediate payment, retroactive to May 16, 1989, the date of his eligibility to retire.

On October 14, 1993, after an evidentiary hearing, the superior court entered an amended final judgment. It impliedly determined the community property interest in Carlos's retirement benefits in STRS. It fixed Lois's share at $1,126 a month, a figure on which the parties had agreed in order to provide her with payments of equal sum after his death as well as before. It ordered Carlos to make immediate payment to Lois in the amount stated until he retired. It also ordered him to make such payment retroactive to May 16, 1989, as she had sought over his opposition: it reasoned that payment of

this sort was mandated by *Gillmore* and *In re Marriage of Crook* (1992) 2 Cal.App.4th 1606 [3 Cal.Rptr.2d 905] (hereafter *Crook*), and was necessary to ensure that she receive her share for the period from May 16, 1989, through October 13, 1993, as guaranteed by former section 4800.8 of the Civil Code (present section 2610 of the Family Code). In addition, it ordered STRS to make payment to her in the amount stated after he retired.

Carlos filed a notice of appeal from the amended final judgment insofar as it ordered him to make payment for the period from May 16, 1989, through October 13, 1993.

In an opinion not certified for publication, Division Four of the First Appellate District of the Court of Appeal affirmed. Carlos petitioned for rehearing. After choosing to grant rehearing on its own motion, the court again affirmed in an unpublished opinion. It concluded that the superior court had not erred, apparently accepting its reasoning as sound.

On Carlos's petition, we granted review.

## II

As stated, the question is this: If the employee spouse continues to work, and the nonemployee spouse chooses immediate payment, as of what date is she entitled to obtain such payment?

In the course of our consideration, we have been presented with four possible answers: (1) the date of the employee spouse's eligibility to retire; (2) the date of a demand by the nonemployee spouse preceding the filing of a motion seeking immediate payment; (3) the date of the filing of such a motion; and (4) the date of the issuance of an order passing thereon.

After review, we believe that the correct answer is the date on which the nonemployee spouse files a motion seeking immediate payment. Such a point in time is bright. More important, the filing of a motion of this sort is a formal act and, as such, furthers recognition and appreciation of the fact and perhaps even the extent of the underlying claim. It clearly constitutes the nonemployee spouse's choice of immediate payment. And it clearly puts the employee spouse on notice that he may exercise his choice of satisfaction or avoidance.[1]

We cannot accept the answer that fixes the date at the nonemployee spouse's demand preceding the filing of a motion seeking immediate payment. Such a point in time might not be bright. The "demand," for example,

---

[1]This answer, of course, effectively requires the filing of a motion by the nonemployee spouse. From all that appears, such is the common, and not unduly onerous, practice, even for

might be oral in its delivery, indeterminate in its substance, or ambiguous in its language. It might therefore encourage litigation, which the "policy of the law" has long sought to "discourage" (*Hamilton* v. *Oakland School Dist.* (1933) 219 Cal. 322, 329 [26 P.2d 296]).[2]

Neither can we accept the answer that fixes the date at the issuance by the court of an order directing immediate payment. Although bright, such a point in time would be too late, to the prejudice of the nonemployee spouse's choice of immediate payment. In addition, it would give the employee spouse an incentive to protract the proceeding in order to make the payment remote in fact even while it is deemed immediate in law.

Finally, we cannot accept the answer that fixes the date at the employee spouse's eligibility to retire. Such a point in time would be too early, to the prejudice of his choice to satisfy or avoid the nonemployee spouse's choice of immediate payment. Eligibility may come long before the filing of a motion. Possibilities that were available around the time of the former may long since have become impossibilities by the time of the latter. The employee spouse may be forced to try to come up with a substantial sum to cover a claim that has "accrued retroactively" over a long period.[3] If his choice of satisfaction or avoidance is to remain meaningful, he should not be put into such a position.

### III

Turning to the present proceeding, we believe that the Court of Appeal did not err by sustaining the superior court's order insofar as it directed Carlos to make payment to Lois for the period from March 31, 1993, the date of the filing of her motion seeking immediate payment, through October 13, 1993, the date immediately preceding its entry of the amended final judgment. As explained, a nonemployee spouse is entitled to postmotion payment. Lois is no exception.

By contrast, we believe that the Court of Appeal did indeed err by sustaining the superior court's order insofar as it directed Carlos to make payment to Lois for the period from May 16, 1989, the date of his eligibility to retire, through March 30, 1993, the date immediately preceding the filing

one appearing in propria persona. And, obviously, it occurs in the context of a proceeding that has already been initiated.

[2]We note in passing that, in her letter of August 3, 1992, Lois made no demand on Carlos, strictly speaking, but simply asked whether he planned to retire in the near future and stated her intention, if he did not, to file the motion in question. Carlos, however, evidently inferred a demand. Had he done otherwise, he might have injected another issue into the proceeding.

[3]Here, more than $51,000 over almost four years.

of her motion seeking immediate payment. As explained, a nonemployee spouse is not entitled to premotion payment. Lois is no exception.

Against this conclusion, Lois argues, in reliance on the superior court's reasoning, that premotion payment is necessary to ensure that she receive her share of the community property interest in Carlos's retirement benefits in STRS for the period from May 16, 1989, through March 30, 1993, as guaranteed by former section 4800.8 of the Civil Code. It is not. Carlos forwent his retirement benefits in that period by continuing to work. As a result, Lois was compelled to forgo what would have been her share of the community property interest therein.[4] To be sure, she could have obtained compensation for the share forgone. But she had to have filed a motion by May 16, 1989. This she did not do. She directs our attention to a finding by the superior court that she was unaware she could have filed a motion until August 3, 1992, and that she acted with reasonable dispatch thereafter. We believe, however, that she had been put on notice well before May 16, 1989, and that she should have proceeded accordingly. She had possessed the opportunity, motive, and means to file a motion for eight years prior to that date. She had been provided with the opportunity by *Gillmore* itself, which was decided in 1981. She had obtained the motive through her recognition of the retirement benefits issue, which dated at the latest to the interlocutory judgment of dissolution in 1979. She had secured the means as a result of her access to information relating to the benefits in question, which extended back to the same period of time. The simple fact is that she did not file a motion by May 16, 1989.[5]

Lois also argues, again in reliance on the superior court's reasoning, that premotion payment is mandated by *Gillmore* and *Crook*. It is not. *Gillmore* and *Crook* are factually distinguishable. It is true that, like the present proceeding, both happen to involve premotion payments. But whereas the payments there extended back no more than a few months, specifically, three months in *Gillmore* and six months in *Crook*, those here reach almost four years into the past. In any event, *Gillmore* and *Crook* are not legally controlling. Neither considers the proposition whether premotion payment is

---

[4]Of course, if Carlos had received his retirement benefits, Lois would apparently have had a claim to her share of the community property interest therein. (See, e.g., *Henn* v. *Henn* (1980) 26 Cal.3d 323, 328-333 [161 Cal.Rptr. 502, 605 P.2d 10].) He did not. She does not.

[5]Lois discerns support for premotion payment in the Legislature's declaration that former section 4800.8 of the Civil Code should be "deemed to be retroactive to June 1, 1988." (Stats. 1988, ch. 542, § 9, p. 1999.) We do not. Surely, the provision is applicable. But, as shown in the text, its application does not compel Carlos to pay what she seeks.

Lois also discerns support for premotion payment in the marital settlement agreement. Here too, we do not. Neither expressly nor impliedly did Carlos bind himself to pay what she seeks.

mandated. ■ "It is axiomatic that cases are not authority for propositions not considered." (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7 [82 Cal.Rptr. 724, 462 P.2d 580].)[6]

## IV

For the reasons stated above, we conclude that we must reverse the judgment of the Court of Appeal to the extent that it affirms the judgment of the superior court insofar as it orders Carlos to pay Lois for the period from May 16, 1989, through March 30, 1993. We also conclude that we must remand the cause to the Court of Appeal and direct it to modify the judgment of the superior court to order Carlos to pay Lois for the period from March 31, 1993, and to affirm the judgment as modified. Finally, in all other respects, we conclude that we must affirm the judgment of the Court of Appeal.

It is so ordered.

George, C. J., Baxter, J., Werdegar, J., Chin, J., and Lucas, J.,* concurred.

**KENNARD, J.,** Concurring and Dissenting.—Under California community property law, a spouse's retirement benefits are community property to the extent the spouse earned them by employment during the marriage. Upon dissolution of the marriage, such benefits, like other community property, are to be divided equally between the spouses, even though the employee spouse may not yet have retired or even have become eligible for retirement. Because immediate division is frequently impractical in these cases, actual division of community property retirement benefits may be postponed until the employee spouse retires or becomes eligible to retire. In that situation, the other spouse may opt to begin receiving his or her community share of the retirement benefits at any time after the employee spouse becomes eligible to retire. At issue in this case are the legal requirements for the exercise of this option.

---

[6]We note in passing that the superior court should have determined the community property interest in Carlos's retirement benefits in STRS as of March 31, 1993, the date of the filing of Lois's motion for immediate payment. Instead, it made its determination, *in accordance with her motion*, as of May 1992. Carlos has not made any complaint in this regard. Neither has Lois. Nor may she.

The Court of Appeal ordered Carlos and Lois each to bear his or her own attorney fees and costs on appeal. In his brief on the merits, Carlos suggests for the first time that the court may have erred. We may decline to reach an issue, like the present, that was not set forth in the petition for review or any answer thereto, or that is not fairly included in one that was. (Cal. Rules of Court, rule 28(e)(2).) We do so here.

*Retired Chief Justice of the Supreme Court, assigned by the Acting Chief Justice pursuant to article VI, section 6, of the California Constitution.

The majority holds that a nonemployee spouse becomes entitled to payment of his or her community property interest in the employee spouse's retirement benefits as of the date on which he or she files a motion in the superior court seeking immediate payment. I disagree. In my view, a nonemployee spouse should not be required to resort to formal judicial proceedings to exercise the right to immediate payment of retirement benefits; an unequivocal written demand to the employee spouse should suffice to trigger entitlement to payment.

Here, the nonemployee spouse first made an unequivocal written demand for payment of her community property share of her former spouse's pension by filing a motion in superior court seeking modification of the judgment of marital dissolution. For that reason, under either my approach or the majority's, her entitlement to payment commenced at the time of that court filing.

I

Carlos V. Cornejo (hereafter Carlos) and Joanne Lois Cornejo (hereafter Lois) married in 1956. The couple separated and filed for marital dissolution in 1978. Throughout the marriage, Carlos was employed by the San Francisco Unified School District and made contributions to the California State Teachers' Retirement System.

On January 8, 1980, the superior court entered a final judgment dissolving the marriage, but retained jurisdiction to determine Lois's entitlement to her community property share of Carlos's retirement benefits.

One year later, in *In re Marriage of Gillmore* (1981) 29 Cal.3d 418, 423-426 [174 Cal.Rptr. 493, 629 P.2d 1], this court held that, after a dissolution of marriage, a nonemployee spouse need not wait until the employee spouse actually retires to begin receiving his or her community property share of the employee spouse's retirement benefits, but can demand immediate payment as soon as the employee spouse is *eligible* to retire. The employee spouse then has the option of retiring and paying the nonemployee spouse his or her share of the retirement benefits, or continuing to work and using other funds to compensate the nonemployee spouse for the retirement benefits due him or her. (*Id.* at p. 426.)

In this case, Carlos became eligible for retirement on May 16, 1989, at age 60. He chose to continue working, however.

More than three years later, on August 3, 1992, counsel for Lois wrote to Carlos's attorney inquiring whether Carlos intended to retire, and stating that

if Carlos did not, Lois would seek payment of her community property share of the pension benefits, citing in support this court's 1981 decision in *In re Marriage of Gillmore, supra,* 29 Cal.3d 418. In the letter, Lois's attorney asserted that the monthly payment due Lois was $1,381. On September 30, 1992, Carlos's attorney responded in writing; he contended that Lois was entitled to only $394 per month (a sum based on Lois's pro rata share of the funds deposited in Carlos's retirement account during their marriage). In a letter dated October 13, 1992, counsel for Lois reasserted that Lois was entitled to a monthly pension payment in excess of $1,300, and expressed the desire "for a mutually satisfactory resolution of the matter," adding that Lois was "willing to wait approximately six months before [Carlos] would commence payments to her of her share of the retirement benefits."

Some five and one-half months later, on March 31, 1993, with the parties still in disagreement as to the amount of Lois's community property share in Carlos's retirement benefits, Lois filed a motion in superior court for modification of the dissolution judgment. She sought an order directing Carlos to pay her $1,381 per month, retroactive to May 16, 1989 (the date on which Carlos became eligible to retire). The trial court granted Lois's motion and awarded payments retroactive to May 16, 1989, of $1,126 per month (a figure based on the reduced monthly pension Carlos would receive under a retirement option providing "survival benefits" to Carlos's beneficiaries after his death).

Carlos appealed, challenging the award of retroactive payments. The Court of Appeal affirmed the trial court's judgment. We granted Carlos's petition for review.

## II

The majority concludes that because Lois, the nonemployee spouse, did not demand her community property share of Carlos's retirement benefits until nearly four years after the date on which Carlos was first eligible to retire, Lois is not entitled to payment of such benefits retroactive to the date of initial retirement eligibility. I agree.

The majority further holds, however, that a nonemployee spouse's right to receive payment of the share of retirement benefits due him or her does not begin until the nonemployee spouse files a motion with the court asserting a right to payment. I disagree. In my view, a clear and unequivocal written demand for immediate payment by the nonemployee spouse should be sufficient to trigger the obligation of the employee spouse to begin payments. The majority presents no reason why this solution would not be both

fair and feasible. The majority asserts that a demand for payment is insuffi-cient because, it conjectures, the demand "might be oral in its delivery, indeterminate in its substance, or ambiguous in its language." (Maj. opn., *ante*, at p. 385.) None of these criticisms posed by the majority, however, is a valid objection to my proposal, which would require that the nonemploy-ee's demand for payment of retirement benefits be in writing and unambig-uous.

In making the nonemployee spouse's exercise of community property pension rights contingent on the commencement of legal action, the majority weakens the underpinnings of this court's decision in *In re Marriage of Gillmore, supra*, 29 Cal.3d. 418, which sought to protect the nonemployee spouse's community property interest in the employee spouse's retirement benefits. *Gillmore* held that once an employee spouse becomes eligible to receive payment of retirement benefits, the nonemployee spouse has as of that time an immediate right to payment of his or her community property share of those benefits and need not wait until the employee spouse's actual retirement to obtain such benefits. (*In re Marriage of Gillmore, supra*, 29 Cal.3d at pp. 422-423, 428.) To hold otherwise, we said in *Gillmore*, would deprive the nonemployee spouse "of the immediate enjoyment of an asset earned by the community during the marriage," and would subject the nonemployee spouse "to the risk of losing the asset completely" if the employee spouse were to die while still employed. (*Id.* at p. 424.) Thus, an employee spouse may not, by continuing to work, defeat the nonemployee spouse's community property interest. (*Id.* at p. 423.) Rather, an employee spouse who decides not to retire when eligible to do so "must reimburse [the nonemployee spouse] for the share of community property that she [or he] loses as the result of that decision." (*Id.* at p. 427.) The nonemployee spouse, however, "may choose to wait, preferring to receive the retirement benefits when the employee spouse actually retires," at which time the value of the pension plan may have increased. (*Id.* at p. 428.) But if the nonemployee spouse opts for immediate payment of that spouse's share of the community property interest in the retirement benefits, she or he "has a right to do so." (*Ibid.*)

Under our decision in *In re Marriage of Gillmore, supra*, 29 Cal.3d 418, in marriage dissolution cases, *all* nonemployee spouses have the right to begin receiving *immediate payment* of retirement benefits at any time after the date their ex-spouses become eligible to retire. But under today's majority hold-ing, the nonemployee spouse cannot exercise the right to begin receiving retirement benefits unless he or she has the wherewithal to retain counsel and to pursue court action. Nonemployee spouses lacking such financial resources will be unable to exercise their community property pension rights, and as a consequence will suffer the loss of their rightful share of

retirement benefits, unless and until they can afford to hire a lawyer to bring formal legal proceedings asserting their rights.

Furthermore, because under the majority's holding a nonemployee spouse's unequivocal written demand for payment of his or her share of retirement benefits is a meaningless act that cannot trigger the employee spouse's obligation to pay benefits, it is in the employee spouse's financial interest to ignore the written demand and to wait until the nonemployee spouse brings a formal court proceeding. To put it succinctly, the majority's holding encourages "stonewalling" by the employee spouse.

There would be no incentive for the employee spouse to "stonewall," however, if, as I propose, the nonemployee spouse's right to payment of his or her community property interest in the employee spouse's retirement benefits were to accrue on the date on which the nonemployee spouse made an unequivocal written demand for such benefits; an employee spouse who refused to honor the request would owe payments dating back to the time of the nonemployee spouse's initial written demand.

The majority also expresses concern that a rule which makes community property retirement benefit payments commence upon demand might "encourage litigation." (Maj. opn., *ante*, at p. 386.) To the contrary, it is the majority's rule that encourages litigation by requiring formal legal proceedings before a nonemployee spouse can collect his or her share of the community property interest in the employee spouse's retirement benefits. In contrast, the written, unequivocal demand rule that I propose may dispense with the need to litigate any issue. Upon receiving the demand and knowing that they are responsible for all payments due after the date set forth in the demand, most employee spouses would likely begin payments promptly rather than incur needless litigation whose conclusion is foregone. Even if, as occurred here, the parties dispute the exact amount due the nonemployee spouse, my proposed solution would preserve the ability of the parties to resolve their differences without court intervention. In *In re Marriage of Gillmore, supra*, 29 Cal.3d at page 428, this court expressed confidence that parties in marriage dissolution cases would "[f]requently" be able "to arrive at a reasonable settlement of these issues."

Therefore, unlike the majority, I would hold that a nonemployee spouse's entitlement to payment of his or her community property interest in the employee spouse's retirement benefits begins on the date when the nonemployee spouse notifies the employee spouse in writing of electing to receive payment immediately rather than on the actual date of the employee spouse's retirement. Upon notice of the election, the employee spouse can decide

whether to retire and start collecting retirement benefits or to continue working and paying the nonemployee spouse "an amount equivalent to her [or his] interest." (*In re Marriage of Gillmore, supra,* 29 Cal.3d at p. 427.)

In this case, the result is the same irrespective of which rule is applied: Lois never made a written demand for immediate payment of her community property share of Carlos's retirement benefits until March 31, 1993, when she filed in the superior court a motion to modify the dissolution judgment. (The August 3, 1992, letter sent by Lois's attorney made no specific demand for immediate payment of Lois's share of Carlos's retirement benefits; it merely inquired whether Carlos intended to retire. And in the letter of October 13, 1992, the attorney expressed Lois's willingness to defer payment of any retirement benefits for another six months.) Thus, under either the majority's rule or my proposed rule, Lois's entitlement to retirement benefit payments commenced on March 31, 1993. Accordingly, while I disagree with the rule the majority adopts, I concur in the judgment.