[No. D042212. Fourth Dist., Div. One. May 13, 2004.]

Estate of RAUL MIRAMONTES-NAJERA, Deceased.
EVANGELINA B. MIRAMONTES, Petitioner and Appellant, v.
SILVIA LIZARRAGA PRECIADO et al., Objectors and Respondents.

## COUNSEL

Luce, Forward, Hamilton & Scripps, Charles A. Bird, Mary F. Gillick and Jennifer M. McGibbons for Petitioner and Appellant.

Paluso & Sceper and Duane H. Sceper for Objectors and Respondents.

## OPINION

**McCONNELL, P. J.—** ■ In *Estate of Wilson* (1986) 183 Cal.App.3d 67, 68–69 [227 Cal.Rptr. 794], the court held that a surviving spouse who did not consent to transfers of community property into bank accounts for third persons may enforce his or her community property interest on an asset-by-asset basis, even though he or she is already receiving more than one-half of the total community property. In this case, we hold as a matter of first impression that in enacting Probate Code[1] section 5021, the Legislature intended to codify, rather than nullify, the *Estate of Wilson* rule. Accordingly, we reverse orders denying Evangelina B. Miramontes's (Evangelina)[2] petition under section 5021 to set aside the transfers of her community property interest in certain pay-on-death accounts, and remand the matter to the trial court with directions.

### FACTUAL AND PROCEDURAL BACKGROUND

Evangelina and Raul Miramontes-Najera (Raul) married in Mexico in 1956. According to Evangelina's petition, they "entered into an express community property marriage." They were married until Raul's death in October 2000 in San Diego, California.

Beginning in June 1998, without Evangelina's consent, Raul transferred a total of $802,996 in community property funds into nine bank accounts payable on death to persons other than Evangelina. He transferred $100,000 into each of two money market accounts payable to, respectively, the minor children of Silvia Lizarraga Preciado (Silvia), Silvia Miramontes Lizarraga (young Silvia) and Adolfo Miramontes Lizarraga (Adolfo), and transferred $3,000 into a deposit certificate payable to young Silvia.[3] In addition, Raul created six other accounts payable to third persons not involved in this appeal, consisting of $100,000 deposited in a money market account and $499,996 placed in five certificate of deposit accounts.

Raul had arranged to transfer all the community property by multiple nontestamentary means. Evangelina received community property having a total value of approximately $1.3 million, more than one-half of the value of the community property estate.

Evangelina petitioned the court under section 5021 for an order setting aside the transfer of one-half of the funds in each of the pay-on-death

---

[1] Statutory references are to the Probate Code unless otherwise specified.

[2] To avoid confusion we refer to persons with identical family names by their first names.

[3] We refer to Silvia and her children collectively as the Lizarragas.

accounts. Citing *Estate of Wilson, supra,* 183 Cal.App.3d 67, she argued section 5021 requires the court to set aside her community interest separately as to each account, regardless of any other community property she received outside probate. The Lizarragas opposed the petition on the ground Evangelina had already received nonprobate transfers of community property exceeding her one-half interest in the community estate. They argued that in enacting section 5021, the Legislature intended to abrogate the holding in *Estate of Wilson.*

The court issued a letter ruling denying the petition "insofar as a blanket set aside of the . . . non-consensual transfers is concerned." The court determined section 5021 "empowers [it] to impose such terms, conditions and remedies as appear equitable under the circumstances of this case, and [it] will hear evidence and will exercise its equitable powers to make such an order that insures that each party—Petitioner and the decedent, have or have the right to dispose of one-half of their community property." The court also ruled that "to the extent the evidence shows that Petitioner has received half or more of the community property she owned with decedent, none of the non-consensual transfers will be set aside."

After the interim order was issued, Evangelina conceded she received assets exceeding one-half of the community estate, including houses in California and Mexico, a condominium in Florida and "one of the California POD [pay-on-death] accounts." Accordingly, no evidentiary hearing was held. The court issued an order adopting and making final its previous findings and denying the petition as to all pay-on-death accounts.

## DISCUSSION

### I. *Request for Dismissal*

Preliminarily, we dispose of the Lizarragas' contention the orders under section 5021 are not appealable under the Probate Code, and because Evangeline did not file a timely petition for writ relief, we should dismiss the appeal.

" 'Appeals [that] may be taken from orders in probate proceedings are set forth in . . . the Probate Code, and its provisions are exclusive.' [Citation.] 'There is no right to appeal from any orders in probate except those specified in the Probate Code.' [Citation.] 'Appeals in general probate . . . matters are limited.' [Citation.] 'If there [were] a free appeal in every probate matter, estates could be unreasonably delayed.' " (*Estate of Stoddart* (2004) 115 Cal.App.4th 1118, 1125–1126 [9 Cal.Rptr.3d 770].)

■ The Probate Code does not specifically list as appealable orders denying petitions to set aside nonconsensual nonprobate transfers of community property. However, it is well established that a probate order's appealability is determined not from its form, but from its legal effect. (*Estate of West* (1912) 162 Cal. 352, 354 [122 P. 953]; *Estate of Estrem* (1940) 16 Cal.2d 563, 566 [107 P.2d 36]; *Estate of Warner* (1958) 162 Cal.App.2d 799, 803 [329 P.2d 79]; *Estate of Hart* (1953) 119 Cal.App.2d 310, 312 [259 P.2d 703]; *Estate of Friedman* (1979) 100 Cal.App.3d 810, 813–814, fn. 2, [161 Cal.Rptr. 311]; *Estate of Effron* (1981) 117 Cal.App.3d 915, 921, fn. 3 [173 Cal.Rptr. 93]; *Estate of Richter* (1993) 12 Cal.App.4th 1361, 1366 [16 Cal.Rptr.2d 108]; *Estate of Martin* (1999) 72 Cal.App.4th 1438, 1442 [86 Cal.Rptr.2d 37].) An order is appealable, even if not mentioned in the Probate Code as appealable, if it has the same effect as an order the Probate Code expressly makes appealable. (*Estate of Martin,* at p. 1443.) Section 1303, subdivision (f) makes appealable the grant of or refusal to grant an order "determining heirship, succession, entitlement, or the persons to whom distribution should be made." The orders here determine the distribution of the pay-on-death accounts, and thus fall within the statutorily defined class of appealable orders. (*Estate of Richter,* at pp. 1365–1366.)

The Lizarragas rely on *Estate of Stoddart, supra,* 115 Cal.App.4th 1118, in which this court held that orders denying motions for reconsideration of probate orders under sections 17000 (to determine entitlement to distribution of estate) and 17200 (to ascertain trust beneficiaries) are not appealable orders. We stated that "in the absence of specific statutory authority authorizing such appeals, . . . the court's orders denying Wilson's motions for reconsideration are not appealable." (*Stoddart,* at p. 1126.) However, there the parties did not raise, and we did not address, the significant body of law, including this court's opinion in *Estate of Effron, supra,* 117 Cal.App.3d at page 921, footnote 3, holding that an order's legal effect, rather than its form, determines its appealability. " 'It is axiomatic that cases are not authority for propositions not considered.' " (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476].)

■ The Lizarragas correctly point out that under the "one final judgment" rule an appeal is available only from a final judgment (Code Civ. Proc., § 904.1, subd. (a)), and no final judgment was entered. However, we may consider orders a final judgment for purposes of appeal when as here, they have all the earmarks of a final judgment. Nothing remains for judicial consideration concerning the accounts, the orders are the only judicial rulings regarding the accounts, and there is no other avenue for appellate review. Under these circumstances, the orders are appealable as a final judgment. (*Bank of California v. Thornton-Blue Pacific, Inc.* (1997) 53 Cal.App.4th 841, 845–846 [62 Cal.Rptr.2d 90]; see also *Sjoberg v. Hastorf* (1948) 33 Cal.2d

116, 119 [199 P.2d 668] ["An appeal is allowed if the order is a final judgment against a party in a collateral proceeding growing out of the action."].)

■ The Lizarragas also contend we should dismiss the appeal because service of Evangelina's opening brief was defective. They assert the brief "was not served upon all parties, and in particular upon specifically interested and affected parties," and reversal of the order would materially affect the rights of parties who did not receive notice. The Lizarragas note that five of the beneficiaries of accounts that are subject to the final order, representing nearly $600,000 in interests, have not been served. However, nothing in the clerk's transcript indicates that anyone except Evangelina and the Lizarragas ever appeared below. Briefs must be served only on adverse parties who appeared separately. (See Cal. Rules of Court, rule 105(e).)

We also reject the Lizarragas' contention we should dismiss the appeal because the record does not establish a material element of Evangelina's marital status and property rights. According to the Lizarragas, as evidence of her marital status Evangelina relied on lodged documents not a part of the record on appeal. However, the record is sufficient to permit us to evaluate the arguments presented and we therefore decline to dismiss the appeal on this ground.

II. Estate of Wilson and Section 5021

A

■ "Upon the death of a married person, one-half of the community property belongs to the surviving spouse and the other half belongs to the decedent." (§ 100, subd. (a).) Each spouse has the right of testamentary disposition over his or her half of the community property. (*Tyre v. Aetna Life Ins. Co.* (1960) 54 Cal.2d 399, 404–405 [6 Cal.Rptr. 13, 353 P.2d 725].)

In *Estate of Wilson, supra,* 183 Cal.App.3d 67, 68–69, the decedent, without his wife's consent, used community property to fund 10 Totten trust bank accounts for his children. After his death, she filed a petition in probate court claiming the right to all the decedent's community property. The objectors claimed she had no right to the children's accounts because their total funds were less than one-half of the total value of the community property. The court held: "When a spouse deposits community property funds in a bank account in his name as trustee for a third person, upon that spouse's death only one-half of the community property in the account is transmitted to the third person. The other one-half, being the surviving spouse's share of

community property, goes to the survivor *even though he or she is already receiving more than one-half of the total community property of the parties.*" (Italics added.)

The court noted the meaning of the term "community property" in former section 201 (now § 100, subd. (a)) was "not clearly indicate[d]," and the "phrase 'one-half of the community property' is, on its face, capable of meaning either one-half of the 'total value' of all community property or one-half of 'each item' of community property." (*Estate of Wilson, supra,* 183 Cal.App.3d at p. 70.) Based on case law, the court concluded the statute meant "the decedent has a right to dispose of only one-half of *each community property asset* to someone other than a spouse, although none of the cases directly hold[s] the decedent's right of disposition is so limited." (*Ibid.,* citing *Odone v. Marzocchi* (1949) 34 Cal.2d 431, 439 [212 P.2d 233]; *Trimble v. Trimble* (1933) 219 Cal. 340, 347 [26 P.2d 477]; *Estate of Sweitzer* (1932) 215 Cal. 489, 493 [11 P.2d 633]; *Tyre v. Aetna Life Ins. Co., supra,* 54 Cal.2d 399, 403.)

The court further explained: "The rationale of this rule is founded in the nature of community property. 'The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests.' [Citation.] In other words, each spouse has a vested undivided one-half interest in the community property. Death of a spouse only dissolves the community; it does not affect the character of the property acquired or rights vested before the spouse's death. [Citations.] [¶] Because each asset is only half his or hers to give, a spouse cannot make a testamentary disposition to a third party of any specific item of community property except by a 'forced election' requiring the surviving spouse to elect to take under the testamentary scheme or to take his or her community property share. To give an example, one spouse cannot devise the family residence to a third party even if there are sufficient other community assets to counterbalance the gift's value, because each spouse only owns an undivided one-half interest in the residence. Obviously, *the decedent cannot give away more than he or she owns.* Indeed, it would be quite unfair to allow either spouse to give away an asset that both spouses treasure based merely on the contingency of who dies first. . . . [¶] Although this rule makes less practical sense in the context of fungible assets like money, . . . the same rule applies." (*Estate of Wilson, supra,* 183 Cal.App.3d at pp. 72–73, fns. omitted, italics added.)

B

In 1992, the Legislature enacted section 5021, which provides at subdivision (a): "In a proceeding to set aside a nonprobate transfer of community

property on death made pursuant to a provision for transfer of the property executed by a married person without the written consent of the person's spouse, the court *shall set aside* the transfer as to the nonconsenting spouse's interest in the property, *subject to* terms and conditions or other remedies that appear equitable under the circumstances of the case, taking into account the rights of all interested persons." (§ 5021, subd. (a), italics added.) Section 5020 provides that a "provision for a nonprobate transfer of community property on death executed by a married person without the written consent of the person's spouse . . . is not effective as to the nonconsenting spouse's interest in the property."

■ The trial court essentially interpreted section 5021, subdivision (a) as abrogating the rule of *Estate of Wilson.* The court determined the statute's language "subject to terms and conditions or other remedies that appear equitable under the circumstances of the case" modifies the phrase "shall set aside," and gave it discretion to not set aside any portion of the pay-on-death accounts because Evangelina received at least one-half of the total value of the community estate. The court found it "is illogical to argue that a spouse has (pursuant to Probate Code, § 100) the absolute right to give away his or her half of the community property by will, but cannot do so by another non-probate estate planning device such as a [pay-on-death] account or a joint tenant vesting," and the "correct interpretation of section 5021 enables the Court to make such orders as may be required to insure that each spouse may dispose of . . . half of the community property."

■ Statutory interpretation is a question of law we review independently. (*Camarillo v. Vaage* (2003) 105 Cal.App.4th 552, 560 [130 Cal.Rptr.2d 26].)[4] " ' "When interpreting a statute, we must ascertain legislative intent so as to effectuate the purpose of a particular law. Of course our first step in determining that intent is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. [Citation.] When the words are clear and unambiguous, there is no need for statutory construction or resort to other indicia of legislative intent, such as legislative history." ' " (*Noel v. River Hills Wilsons, Inc.* (2003) 113 Cal.App.4th 1363, 1373 [7 Cal.Rptr.3d 216], quoting *National Technical Systems v. Commercial Contractors, Inc.* (2001) 89 Cal.App.4th 1000, 1007–1008 [108 Cal.Rptr.2d 67].) When a statute is susceptible to more than one reasonable interpretation, we may consider a variety of extrinsic aids, such as the legislative history. (*Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970].)

■ Generally, for purposes of statutory interpretation, "shall" is mandatory and "may" is permissive. (*Sheyko v. Saenz* (2003) 112 Cal.App.4th 675, 697 [5 Cal.Rptr.3d 350].) Moreover, the Probate Code defines the term

---

[4] The Lizaragas erroneously assert an abuse of discretion standard applies.

"shall" as "mandatory." (§ 12.) Therefore, we should interpret the "shall set aside" language of section 5021, subdivision (a) as mandatory. If the "subject to" phrase in section 5021, subdivision (a) were interpreted to give courts discretion to not set aside nonconsensual transfers of community property on equitable grounds, the word "shall" would be meaningless. "In construing a statute we are required to give independent meaning and significance to each word, phrase, and sentence in a statute and to avoid an interpretation that makes any part of a statute meaningless." (*San Diego Police Officers Assn. v. City of San Diego Civil Service Com.* (2002) 104 Cal.App.4th 275, 284 [128 Cal.Rptr.2d 248].)

Further, to any extent section 5021 is arguably ambiguous, the legislative history shows the Legislature intended to codify, rather than supplant, the holding in *Estate of Wilson, supra,* 183 Cal.App.3d 67. The California Law Revision Commission (the Commission) recommended section 5021, among other provisions, as a "codification of the general principles governing nonprobate transfers of community property." (Recommendation: Nonprobate Transfers of Community Property (Nov. 1991) 21 Cal. Law Revision Com. Rep. (1991) p. 169 (Recommendation).) The Commission explained the legislation was intended to "resolve[] problems created by *Estate of MacDonald* [(1990)] 51 Cal.3d 262 [272 Cal.Rptr. 153, 794 P.2d 911] . . . , in estate planning for married persons." (Recommendation, p. 165.) The Commission did not suggest it had any objection to *Estate of Wilson,* or that section 5021 was intended to nullify its holding. To the contrary, the Commission cited *Estate of Wilson* in explaining that under existing case law "after the death of a transferor, a donative transfer made without the required consent may be set aside as to the one-half interest of the nonconsenting spouse." (Recommendation, pp. 167 & fn. 4, 170 & fn. 8.)

The Commission did find that in some instances the *remedy* of recovery of one-half of a nonconsensual transfer is "unduly restrictive." (Recommendation, *supra,* 21 Cal. Law Revision Com. Rep., p. 170.) The Commission wrote that under subdivision (a) of section 5021, "the court has discretion to fashion an appropriate order, depending on the circumstances of the case. The order may, for example, provide for recovery of the value of the property rather than the particular item, or aggregate property received by a beneficiary instead of imposing a division by item." (Recommendation, p. 183.) This does not suggest a court has discretion to *deny* a surviving spouse's petition under section 5021 on equitable grounds. Rather, the Commission was concerned with an equitable remedy when nonconsensual transfers were of nonfungible assets, an issue discussed but not resolved in *Estate of Wilson, supra,* 183 Cal.App.3d at page 73.

We conclude section 5021 codifies the *Estate of Wilson* rule, and Evangelina is entitled to one-half of the community property funds in each of

the pay-on-death accounts Raul established, notwithstanding her previous receipt of more than one-half of the community estate. Because Evangelina did not consent to the transfers Raul made, the funds were "only half his . . . to give." (*Estate of Wilson, supra,* 183 Cal.App.3d at p. 72.) However, because it appears she has already received funds from at least one of the accounts, we remand the matter to the trial court for a new hearing on the petition.

## DISPOSITION

The orders are reversed and the matter is remanded to the trial court for further proceedings in accordance with this opinion. Evangelina is awarded costs on appeal.

Benke, J., and McIntyre, J., concurred.