Filed 3/26/13  U.S. Bank v. Super. Ct. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| U.S. BANK, N.A., as Trustee, etc., | |
| Petitioner, | G046642 |
| v. | (Super. Ct. No. 30-2010-00353214) |
| THE SUPERIOR COURT OF ORANGE COUNTY, | O P I N I O N |
| Respondent; | |
| BELLA TERRA OFFICE JV, LLC, | |
| Real Party in Interest. | |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Luis A. Rodriguez, Judge.  Petition denied.

Perkins Coie, J. David Larsen, Gabriel Liao, Vilma Palma-Solana and James D. DeRoche for Petitioner.

No appearance for Respondent.

Friedman Law Group, J. Bennett Friedman, Stephen F. Biegenzahn and Michael Sobkowiak for Real Party in Interest.

* * *

INTRODUCTION

Bella Terra Office JV, LLC (Bella Terra), obtained a loan to acquire three office buildings and two retail buildings in a retail center in Huntington Beach (the Property). Bella Terra executed a deed of trust in favor of the lender, granting it a security interest in certain real and personal property. U.S. Bank, N.A., as Trustee for the Registered Holders of ML-CFC Commercial Mortgage Trust 2007-7, Commercial Mortgage Pass-Through Certificates Series 2007-7, acting by and through Midland Loan Services, a division of PNC Bank, N.A., its Special Servicer (U.S. Bank), is the successor to the lender who made the loan to Bella Terra to acquire the Property. After Bella Terra defaulted on the loan, a receiver was appointed to oversee the Property.

After the U.S. Bank loan funded, but before Bella Terra defaulted on the loan, Bella Terra made a separate loan to the owner of a parking structure adjacent to the Property to pay for improvements to that structure. U.S. Bank claims a security interest in the promissory note for the loan from Bella Terra. In this proceeding, U.S. Bank requested the trial court to order Bella Terra to turn over to the receiver the promissory note for the loan and payments on that note. The court denied the request, and this appeal followed.

We resolve the serious questions regarding the appealability of the trial court's order by exercising our discretion to treat U.S. Bank's appeal as a petition for a writ of mandate. Both parties agree we should treat the appeal as such a petition. We deny writ relief because the promissory note in favor of Bella Terra, evidencing the loan for improvements to the parking structure, does not fall within the description of the collateral for the original loan made to Bella Terra to purchase the Property.

2

In May 2007, Bella Terra obtained a $105 million loan from Merrill Lynch Mortgage Lending, Inc. (the U.S. Bank loan),[1] to acquire the Property. The U.S. Bank loan was memorialized by a written loan agreement and was secured by a deed of trust, assignment of leases and rents and security agreement (the Deed of Trust). The Deed of Trust secures an interest in the Property and in "[n]on-exclusive easements," a term not defined in any documents contained in the appellate record. Through its ownership of the Property, Bella Terra acquired a majority voting interest in One Pacific Plaza Association, a California nonprofit mutual benefit corporation (One Pacific Plaza), which owns a parking lot and parking structure adjacent to the Property; the parking lot and parking structure are *not* owned by Bella Terra and are *not* a part of the Property.

In 2007, after Bella Terra acquired the Property, the members of One Pacific Plaza determined capital improvements to the parking structure were necessary. Bella Terra agreed to lend over $680,000 to One Pacific Plaza (the One Pacific Plaza loan). One Pacific Plaza executed and delivered to Bella Terra a promissory note evidencing the One Pacific Plaza loan (the Note).

In November 2009, Bella Terra defaulted on the U.S. Bank loan. U.S. Bank filed a complaint for specific performance and appointment of a receiver. The court appointed a receiver to collect rents from the tenants of the Property. U.S. Bank and Bella Terra stipulated to allow the receiver to manage and sell the Property in partial satisfaction of the U.S. Bank loan; the trial court approved the stipulation and entered it as an order in September 2010. The receiver moved for a court order authorizing the sale of the Property. Ultimately, the trial court granted the receiver's motion, over the

---

[1] The U.S. Bank loan was entered into by Bella Terra and two affiliates; Bella Terra eventually assumed all of its affiliates' obligations under the terms of the loan agreement and all related loan documents. U.S. Bank succeeded to all of Merrill Lynch Mortgage Lending's rights under the loan agreement. We will refer only to Bella Terra and U.S. Bank through the remainder of this opinion to avoid confusion.

objection of Bella Terra, and authorized the sale of the Property to GIV Bella Terra Investor, LLC (GIV).

After the sale was authorized, but before it closed, the receiver became aware of the existence of the One Pacific Plaza loan. Bella Terra refused to provide the receiver with the Note or any payments on the One Pacific Plaza loan made to Bella Terra since the receiver's appointment. The receiver therefore filed an ex parte application for an order requiring Bella Terra to turn over the Note and all monies collected under it. After supplemental briefing and a hearing, the trial court denied the application (the turnover order). U.S. Bank timely appealed.

The sale of the Property to GIV was completed. GIV entered into a consent and assumption agreement with U.S. Bank, under which GIV released U.S. Bank and others from any and all liabilities occurring prior to closing, known or unknown, in connection with the sale and acquisition of the Property.

DISCUSSION

I.

*APPEALABILITY*

The order from which U.S. Bank appeals is not a final judgment, and no judgment has been entered since the turnover order was filed. It is "[t]he substance and effect of the order, not its label or form, [that] determines whether it is appealable as a final judgment." (*Joyce v. Black* (1990) 217 Cal.App.3d 318, 321.) We consider whether the order has the earmarks of a final judgment—that is, it leaves nothing for judicial consideration, it is the only judicial ruling on the issue, and there is no other opportunity to review the order by appeal. (*Estate of Miramontes-Najera* (2004) 118 Cal.App.4th 750, 755; *Joyce v. Black*, *supra*, at p. 321.)

In this case, the order has some of the earmarks of a final judgment. Although the order does not dispose of the entire action, it leaves nothing further for

4

judicial consideration on the issue whether the Note is collateral of U.S. Bank, and is the only judicial ruling on that issue. However, nothing would have prevented U.S. Bank from obtaining review of the order on appeal from a final judgment. We conclude the trial court's order is not itself a final judgment.

U.S. Bank argues the turnover order is appealable as a final determination on a collateral matter. "When a court renders an interlocutory order collateral to the main issue, dispositive of the rights of the parties in relation to the collateral matter, and directing payment of money or performance of an act, direct appeal may be taken." (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368.) In supplemental briefing filed pursuant to an order of this court, U.S. Bank and Bella Terra advised this court that the dismissal of the underlying lawsuit is awaiting the trial court's approval of the receiver's final accounting, which, in turn, is awaiting the resolution of the issues raised by this appeal. We cannot see how the matter can truly be collateral when the finalization of the litigation depends on it.

In this case, we exercise our discretion to treat the appeal as a petition for a writ of mandate, in the interests of justice and judicial economy. (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 744-747.) The merits of the issues have been fully briefed, and Bella Terra did not argue the lack of appealability, thereby conceding we could consider the case on its merits. (Indeed, in its supplemental briefing, Bella Terra argues that if this court determines the turnover order is not an appealable order, it should exercise discretion to treat the notice of appeal as a petition for a writ of mandate.)

II.

*STANDING AND MOOTNESS*

Bella Terra argues U.S. Bank does not have standing to pursue this writ proceeding because it is not an aggrieved party. (Code Civ. Proc., § 902.) An aggrieved party is one "whose rights or interests are injuriously affected by the judgment.

5

[Citations.] Appellant's interest "'must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment.'" [Citation.]" (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737.) Bella Terra contends that U.S. Bank suffered no damage as a result of the denial of the turnover order because it has no liability to GIV for the failure to include the Note as part of the sale of the Property to GIV. Bella Terra argues the writ proceeding is moot because U.S. Bank released all personal property claims against Bella Terra when the sale to GIV was completed.

We conclude U.S. Bank has standing to pursue this writ proceeding, and the proceeding is not moot, because the denial of the turnover order affects U.S. Bank's claimed security interests. When GIV assumed the U.S. Bank loan, U.S. Bank continued to have a security interest in all secured property transferred by the receiver to GIV. The consent and assumption agreement specifically provides that U.S. Bank "shall continue to have a security interest (and is hereby granted a security interest) in all Collateral [(earlier defined as 'all fixtures, personal property and other property described in the Loan Documents')] whether such Collateral is now owned by [GIV] or is hereafter acquired by [GIV]." Therefore, if the Note is ultimately transferred to GIV, U.S. Bank might have a security interest in it. This is a sufficient claimed interest to give U.S. Bank standing to bring the writ petition, and means the writ proceeding is not moot despite the completion of the sale of the Property.

III.

*STANDARD OF REVIEW*

This case involves a single issue of contract interpretation, and there are no disputed facts; therefore, we review the matter de novo. (*Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 694; *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955-956.)

6

IV.

*IS THE NOTE WITHIN THE DEED OF TRUST'S DESCRIPTION OF THE
COLLATERAL FOR THE U.S. BANK LOAN?*

A. *The Deed of Trust*

The Deed of Trust gives U.S. Bank a security interest in the following property of Bella Terra to secure the U.S. Bank loan:

" . . . [Bella Terra] does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer, convey and grant a security interest to Trustee, its successors and assigns, for the benefit of [U.S. Bank] and its successors and assigns, the following property, rights, interests and estates now owned, or hereafter acquired by [Bella Terra] (collectively, the 'Property'):

"(a)  Co-Tenancy Agreement. . . . [;]

"(b)  Land.  The real property described in Exhibit A attached hereto and made a part hereof (the 'Land');

"(c)  Additional Land. . . . ;

"(d)  Improvements.  The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the 'Improvements');

"(e)  Easements. . . . ;[2]

"(f)  Fixtures and Personal Property. . . . ;

"(g)  Leases and Rents. . . . ;

"(h)  Insurance Proceeds. . . . ;

"(i)  Condemnation Awards. . . . ;

"(j)  Tax Certiorari. . . . ;

"(k)  Rights. . . . ;

---

[2]  There is no argument by U.S. Bank that article 1., section 1.1.(e) of the Deed of Trust is relevant to our analysis.

"(l) Agreements. All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or any business or activity conducted on the Land and any part thereof and all right, title and interest of [Bella Terra] therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to [Bella Terra] thereunder;

"(m) Intangibles. . . . ;

"(n) Accounts. . . . ;

"(o) Conversion. . . . ;

"(p) REA. . . . ; and

"(q) Other Rights. Any and all other rights of [Bella Terra] in and to the items set forth in subsections (a) through (p) above." (Underscoring omitted.)

B. *U.S. Bank's Argument That the Note Is Included in the Deed of Trust*

The parking structure is not part of the land, as defined in the Deed of Trust. The term "Land" is defined as the real property acquired by Bella Terra, i.e., the retail and office buildings it purchased with the proceeds of the U.S. Bank loan, and "[n]on-exclusive easements," which, as we shall discuss *post*, are not defined in any of the documents in the appellate record.

U.S. Bank argues the Note constitutes collateral for the U.S. Bank loan under section 1.1.(l) of article 1. under the Deed of Trust because it is an after-acquired instrument "respecting or pertaining to the use, occupation, construction, management or operation of the Land." U.S. Bank's argument is premised on the assumption that the "[n]on-exclusive easements," included in the definition of the land in the Deed of Trust, are easements for ingress and egress of the parking structure adjacent to the Property, which is used by the Property's tenants and patrons. There is no support for this

8

assumption in the appellate record, however, and U.S. Bank does not cite to any document so stating. Indeed, all of the documents referencing the Property acquired by Bella Terra describe the easements as follows: "Non-exclusive easements as more particularly described and set forth in" other recorded documents; those recorded documents do not appear in the appellate record. Therefore, we have no evidence of the scope of the easements, and whether they are, in fact, for ingress and egress of the parking structure. Nor has U.S. Bank shown that the easements for ingress and egress of the parking structure are otherwise included in the description of "Land" under the Deed of Trust. It is the burden of the party challenging an order on appeal to provide an adequate record to assess error. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295; *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.) U.S. Bank has failed to do so, and we could deny the petition on that ground alone.

Even if we were to examine the merits of U.S. Bank's arguments based on the incomplete record before us, we would find no error. The definition of the land in the Deed of Trust includes certain nonexclusive easements, which, for purposes of this portion of the opinion, we will assume are easements for ingress and egress of the parking structure. The question is whether the Note "respect[s] or pertain[s] to the use, occupation, construction, management or operation of" the nonexclusive easements to ingress and egress of the parking structure.[3]

We conclude the Note evidencing the One Pacific Plaza loan to improve the parking structure is not in respect to and does not pertain to Bella Terra's use of easements to enter or exit the parking structure. The Note has no effect on Bella Terra's right or ability to use its nonexclusive easements. That the purpose of the One Pacific

_____

[3] U.S. Bank cites to Black's Law Dictionary which defines "pertain" as "[t]o relate to." (Black's Law Dict. (9th ed. 2009) p. 1260, col. 2.) U.S. Bank then quotes from cases discussing the meaning of "relate[s] to." However, the Deed of Trust itself does not use the term "relates to," and the meaning of that phrase is not relevant to this opinion.

Plaza loan was to make improvements to the parking structure does not necessarily mean the Note is in respect to or pertains to the use of easements to get in or out of the parking structure. Bella Terra had the right and the ability to use its easements whether or not improvements to the parking structure were made. Therefore, the Note, which evidences the One Pacific Plaza loan made to fund improvements to the parking structure, is not in respect to and does not pertain to the easements. As discussed *ante*, U.S. Bank's argument has no support in the governing documents.

U.S. Bank argues the Note is in respect to or pertains to the Property itself, excluding the nonexclusive easements, because "[i]n California, where most employees and customers drive, it is not practical to lease an office or retail building where no parking is available." This argument stretches credulity almost to the breaking point. The Property also requires electricity to operate; U.S. Bank's argument, taken to its logical conclusion, would mean U.S. Bank had rights of collateral in any promissory notes related to property on which easements for power lines exist.[4]

U.S. Bank also argues the Note is in respect to or pertains to improvements on the land because the One Pacific Plaza loan was made to fund improvements to the parking structure. But the Deed of Trust only creates a collateral interest in instruments respecting or pertaining to the use of improvements; the Deed of Trust defines the improvements as "[t]he buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land." Even assuming that the nonexclusive easements, referenced in the Deed of Trust as part of the land, include easements to enter and exit the parking structure, the upgrades to the parking structure are modifications, repairs, or

---

[4] Bella Terra contends this argument fails because "there are hundreds of parking spaces available for tenants and customers of the shopping center, other than those in the parking structure." We cannot find any evidence in the appellate record supporting this claim. U.S. Bank, however, does not dispute the accuracy of Bella Terra's factual statement.

improvements to the structure itself, not the easements. The easement has not undergone any changes or modifications, so section 1.1.(d) of article 1. of the Deed of Trust is inapplicable.

U.S. Bank further argues that Bella Terra is estopped from disputing the Note is part of the collateral for the U.S. Bank loan because in both the loan agreement and in Bella Terra's operating agreement, Bella Terra agreed and covenanted that it would not engage in any other business activities, acquire assets other than the Property, or make any loans or advances until the U.S. Bank loan was repaid. U.S. Bank contends that because the loan documents evidence an intent that Bella Terra not acquire any assets other than those used as collateral for the U.S. Bank loan, any assets acquired in violation of the terms of the loan documents must become collateral. We disagree. Any acquisition of assets or any business activities that violate the terms of the loan documents may constitute a breach of contract and an act of default. They do not transmute property that is not otherwise collateral for the U.S. Bank loan.

DISPOSITION

The petition for a writ of mandate is denied. Real party in interest shall recover costs on appeal.

FYBEL, J.

WE CONCUR:

MOORE, ACTING P. J.

ARONSON, J.

11